**UNITED STATES of America,
Appellee/Cross–Appellant,**

v.

**Michael Allen MALBROUGH,
Appellant/Cross–Appellee.**

Nos. 90–1062, 90–1180.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 16, 1990.

Decided Dec. 28, 1990.

Alfredo Parrish, Des Moines, Iowa, for appellant/cross-appellee.

Kevin E. VanderSchel, Des Moines, Iowa, for appellee/cross-appellant.

Before LAY, Chief Judge, and JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Michael Allen Malbrough appeals from his conviction of manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii) (1988). Malbrough argues that the district court erred by (1) failing to suppress the search of his greenhouse, (2) denying his motion to dismiss because of the destruction of evidence, (3) denying his motion for a new trial based on alleged prejudicial comments during the government's closing argument, and (4) refusing to give a "possession" jury instruction and an instruction regarding the destruction of evidence. The government cross appeals, arguing that the district court erred in imposing a burden of clear and convincing evidence for sentencing purposes and in failing to find the existence of more than 100 marijuana plants so as to require a mandatory sentence. We affirm the judgment of the district court.[1]

In April 1989, Timothy Kelley was a suspect in a burglary in Burlington, Iowa. The police refrained from filing burglary charges against Kelley in exchange for his assistance in making three narcotic purchases. Kelley assisted the police in four attempted narcotic purchases.

In early June, Kelley learned that an individual was growing marijuana in a greenhouse located somewhere on Gear Avenue in West Burlington. After hearing this information, Kelley went to Gear Avenue and walked through woods next to Malbrough's property. He testified that after seeing what appeared to be a greenhouse, he went on Malbrough's property, looked through open doors of a greenhouse and observed a number of marijuana plants. After being seen by an individual, Kelley immediately left Malbrough's property.[2]

Kelley telephoned Detective Rick Rahn to tell him what he had observed. After receiving this information from Kelley, Rahn chartered an airplane and flew over the Malbrough residence. His aerial obser-

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. Malbrough's version of Kelley's entry onto his property is quite different. Malbrough testified that on May 19, 1989, someone tunneled under his greenhouse and stole 30 marijuana plants. Mr. Dixon, a co-defendant and part-time resident at Malbrough's home, identified Kelley as the person he saw in the greenhouse that day. Kelley flatly denied that he broke into the greenhouse on May 19 or at any other time. The district court made no specific finding on this issue concluding only that "Kelley trespassed on Malbrough's property." *United States v. Malbrough*, No. 89–59, slip op. at 4 (D. Iowa Sept. 19, 1989). Whether Kelley tunnelled under the greenhouse, simply looked in the doors of Malbrough's greenhouse, or trespassed in some other manner, is not material to our analysis, which is based on Detective Rahn's knowledge and affidavit.

vations were consistent with Kelley's description of the property.

Based on the information provided by Kelley and on his observation of the greenhouse by air, Detective Rahn applied for a warrant to search Malbrough's greenhouse. The affidavit in support of the application recited that the information in the affidavit was provided by a confidential informant who had previously given Rahn reliable information, had no motivation to falsify the information, had no known association with known criminals, and no criminal record. Unbeknownst to Detective Rahn, Kelley was also allegedly involved in criminal activities in Kentucky. In August 1989, an indictment was returned against him for impersonating a police officer on March 16, 1989, and committing several burglaries in late March of 1989.

The search warrant was approved and the search was executed on June 9, 1989. The police officers seized the contents of the greenhouse, including a number of marijuana and tomato plants. The greenhouse was equipped with sophisticated hydroponic growing equipment, including an irrigation system and special 1000 watt rotating lights.

Police arrested Malbrough for manufacturing a Schedule I controlled substance. After his arrest, Malbrough consented to a search of his automobile, residence, and the surrounding property. Police discovered literature about methods of growing marijuana, greenhouse operations, and three Polaroid photographs depicting marijuana growing inside the greenhouse. The search of the Malbrough residence revealed a wireless intercom system between a bedroom and the greenhouse.

On the same day, an assistant county attorney requested an order from the Des Moines County Court allowing officers to sample, inventory, and photograph the plants seized from Malbrough's residence, and to destroy those marijuana plants not preserved as evidence. One day later, a Des Moines county judge ordered officers to take random samples, photograph and inventory all plants seized, and to file a return of the same with the court. A police officer inventoried the plants, finding 163 "mature or semi mature plants" and 145 "starter plants." Except for the random samples taken, all plants were immediately destroyed. The samples tested were all marijuana.

At trial, Malbrough admitted growing marijuana but maintained that he did so only because he was despondent over his wife's recent suicide.[3] Testimony established that Malbrough constructed the greenhouse three years before for his wife who had an interest in botanical gardening, especially growing tomatoes. Malbrough hotly contested the number of marijuana plants seized from his property alleging that a number of the plants seized were tomato plants and marijuana and tomato cuttings. Expert witness testimony established that a "cutting" is not a plant in the legal or technical sense until it develops its own root system.

Malbrough was found guilty of manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii). At sentencing, the district court found that Malbrough manufactured 75 marijuana plants and sentenced him to 12 months in prison. Malbrough now appeals and the government cross appeals presenting the issues we have enumerated above. We address these arguments in turn below.

## I.

Malbrough argues that the district court erred in holding that there was a legal search of his property. Malbrough first contends that Kelley was a professional informant who learned about the marijuana by trespassing on Malbrough's property while under standing orders from the police department to make contact with people for narcotic purchases. Malbrough contends that Kelley's trespass constituted an unlawful search of his property.

█ Malbrough acknowledges that trespassing by a private citizen does not consti-

---

**3.** Malbrough's counsel during closing argument read the entirety of Edgar Allen Poe's *Annabel Lee.* No issue is raised on this appeal concerning that aspect of the trial.

tute a search or seizure within the context of the fourth amendment unless the informant is an agent or instrument of the government. *United States v. Jacobsen,* 466 U.S. 109, 115, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984). Malbrough urges, however, that Kelley was a "professional informant" working in concert with the Des Moines county authorities, and thus, qualified as an "agent or instrument" of the government.

In determining whether a private citizen is an agent of the government, two critical factors are "whether the government knew of and acquiesced in the intrusive conduct," and "whether the party performing the search intended to assist law enforcement officials or to further [the informant's] own ends." *United States v. Miller,* 688 F.2d 652, 657 (9th Cir.1982). Other considerations are whether the informant performed the search at the request of the government and whether the government offered a reward. *United States v. Koenig,* 856 F.2d 843, 847 (7th Cir.1988).

■ Malbrough contends that Kelley was much like the informant in *United States v. Walther,* 652 F.2d 788 (9th Cir. 1981). In that case, the Ninth Circuit held that evidence gained as a result of an airline employee's search of a suspicious suitcase should have been suppressed because the informant had "no motivation other than the expectation of reward for his ... efforts." *Id.* at 793. In *Walther,* however, the government routinely paid the informant for searching and locating drugs, and the informant conducted such searches with the government's knowing acquiescence. *Id.* These are not the facts before this court. Here, the police directed Kelley to do nothing more than participate in narcotic purchases. Indeed, no evidence exists that the police asked Kelley to seek out manufacturers of marijuana or even knew of Kelley's entry on Malbrough's property until after it occurred. Kelley testified that he learned about Malbrough's greenhouse from conversations at a local bar and told Rahn about the greenhouse only after he went to Malbrough's property. Rahn also testified that he did not

direct, authorize or even know about Kelley's entry on Malbrough's property until after it occurred. Accordingly, no evidence exists that Kelley entered Malbrough's property " 'with government knowledge and consent, tacit or explicit ...,' " *United States v. Wedelstedt,* 589 F.2d 339, 346 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) (quoting *United States v. Mekjian,* 505 F.2d 1320, 1328 (5th Cir.1975)); *United States v. Luciow,* 518 F.2d 298, 300 (8th Cir.1975). We are satisfied that Kelley did not act as an agent or instrument of the government, and that his entry on Malbrough's property did not violate Malbrough's fourth amendment rights. Accordingly, the court did not err in failing to suppress evidence seized from Malbrough's greenhouse.

■ Malbrough next argues that the district court erred in failing to suppress the evidence seized from his greenhouse because the application for the search warrant contained false and misleading information. The affidavit in support of the search warrant application recited that the confidential informant had "no motivation to falsify the information," "no known association with known criminals," and "no known criminal record." In light of Mr. Kelley's alleged criminal activities in Kentucky and his being under suspicion for the Iowa burglary, these statements were arguably false and misleading. Nevertheless, the warrant is not fatally defective unless Detective Rahn deliberately or recklessly made false statements in the affidavit. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *United States v. Lee,* 743 F.2d 1240, 1245 (8th Cir.1984). Here, the district court's finding that Rahn did not deliberately or recklessly make false statements in his warrant application is not clearly erroneous. *Lee,* 743 F.2d at 1245 (district court's findings of fact on motion to suppress reviewable under clearly erroneous standard). Detective Rahn did not learn of the Kentucky charges until after the search warrant application. Kelley was never arrested for the Iowa burglary, had cooperated with Rahn in the past, and had told Rahn that he had no criminal record.

Accordingly, we cannot conclude that the court erred in failing to suppress evidence obtained from the search of Malbrough's greenhouse.

## II.

■ The remaining arguments made by Malbrough warrant only brief discussion. First, Malbrough contends that the district court erred in denying his motion to dismiss because the government failed to preserve the plants seized from his greenhouse. Malbrough contends that the destruction of the plants constituted a denial of due process of law.

The Supreme Court has held that the state's failure to preserve evidence does not constitute a denial of due process unless the state acted in bad faith, the evidence had apparent exculpatory value and comparable exculpatory evidence was not reasonably available to the defendant. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984). Failure to preserve potentially useful evidence is not a denial of due process unless there is a showing of bad faith. *Id.* at 488, 104 S.Ct. at 2533; *see also Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 338, 102 L.Ed.2d 281 (1988). Here, Malbrough has failed to establish that the state destroyed the plants in bad faith. To the contrary, state authorities destroyed the plants pursuant to a court order and specific Iowa statute mandating the destruction of controlled substances. Iowa Code Ann. § 204.506(1) (West 1987). The evidence was not destroyed in bad faith and there was no violation of Malbrough's due process rights.[4] *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 338.

■ Next, Malbrough contends that a new trial should be ordered because the government made highly prejudicial comments in its closing argument. Specifically, Malbrough complains that although he was not charged with the crime of distributing marijuana, the government stated that there was sufficient evidence intro-

duced at trial to show Malbrough's intent to "distribute" marijuana. Malbrough also argues that the government improperly commented on Malbrough's failure to produce pictures of his prized tomato plants and referred to the testimony of Mr. Dixon, a co-defendant who did not testify at trial. We cannot conclude that any of the government's comments were improper or "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985).

The government's comment that there was sufficient evidence to show Malbrough's intent to distribute marijuana was neither improper nor prejudicial. We do not believe that this comment implied to the jury that Malbrough was charged with distribution of marijuana or that he may have committed other offenses for which he was not charged. *Cf., United States v. Knight*, 535 F.2d 1059, 1062 (8th Cir.1976). (District court erred in allowing government to cast suspicion on defendant as a dealer in stolen goods by references to his possession of other goods not shown to be stolen). Instead, the comment simply responded to Malbrough's own theory of the case, that he grew marijuana for his own personal use. Likewise, the government's comment that Malbrough failed to produce any photographs of his prized tomato plants responded to Malbrough's own testimony, and we do not believe that such a comment impermissibly shifted the burden of producing evidence to Malbrough. *See United States v. Neumann*, 887 F.2d 880, 887 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2210, 109 L.Ed.2d 536 (1990). Nor can we conclude that the government's reference to the trial testimony of Mr. Dixon was anything more than "an inadvertent confusion of ... names." *United States v. Wagner*, 884 F.2d 1090, 1099 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

---

**4.** In light of this conclusion, we also conclude that the district court's refusal to instruct the jury on the presumption that may be afforded by the destruction of evidence was well within its sound discretion. *See e.g., United States v. Williams*, 604 F.2d 1102, 1117 (8th Cir.1979).

Finally, the district court did not err in denying Malbrough's requested jury instructions regarding the lesser included offense of "simple possession." In light of the overwhelming evidence in this case that Malbrough conducted a sophisticated marijuana manufacturing operation, a simple possession charge was not required. *United States v. Short*, 805 F.2d 335, 336–37 (8th Cir.1986); *see also United States v. Klein*, 850 F.2d 404, 405 (8th Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 173, 102 L.Ed.2d 143 (1988).

## III.

■■■■ The government cross appeals, arguing that the district court erroneously applied the clear and convincing evidence standard of proof in making its findings of fact relied on in sentencing Malbrough. Although the court indicated at the commencement of the sentencing hearing that the government must establish the number of marijuana plants "by convincing evidence," we are satisfied that the court did not apply the clear and convincing standard of proof. Indeed, in its written findings of fact, the court indicated that the government bears the burden of proving the number of marijuana plants and that the "reliable" evidence established a total of 75 plants. *United States v. Malbrough*, No. 89–59, slip op. at 3 (D. Iowa Dec. 22, 1989). At the hearing on the government's application for reconsideration of the court's findings of fact, the court stated that the government bears the burden of proving by "persuasive" and "reliable" evidence the number of plants manufactured by defendant.

We are satisfied that the district court did not err in the standard of proof applied in sentencing Malbrough. The guidelines do not prescribe a particular standard of proof. The guidelines do, however, instruct that "reliable" evidence must be considered in making sentencing determinations. Federal Sentencing Guidelines § 6A1.3(a), at 6.2. In light of a number of district court opinions, particularly those from Iowa,[5] we believe that clarification of the standard of proof is a desirable exercise of our supervisory powers. In addition to the guideline requirement of reliable evidence, the majority of the circuits have held that the preponderance of evidence standard of proof should be applied in sentencing.[6] We have earlier held that the preponderance of the evidence standard does not violate the due process clause. *United States v. Gooden*, 892 F.2d 725, 728 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990). We believe that we should now make clear that we will follow the other circuits in holding that the preponderance of evidence standard of proof is to be applied in sentencing determinations.

■■■■ Finally, the government argues that the court's finding that Malbrough manufactured 75 plants is clearly erroneous. Had the court found that Malbrough manufactured more than 100 plants, he would have been subject to a five year mandatory sentence. *See* 21 U.S.C. § 841(b)(1)(B)(vii). The government contends the finding is erroneous because the reliable evidence established that Malbrough manufactured more than 100 plants

5. *See, e.g., United States v. Pierce*, 907 F.2d 56, 57 n. 4 (8th Cir.1990); *United States v. Wayne*, 903 F.2d 1188, 1197 (8th Cir.1990); *United States v. Murphy*, 899 F.2d 714, 716–717 (8th Cir.1990); *United States v. Ehret*, 885 F.2d 441, 444 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). In these cases, we held that a defendant appealing from an order in which a finding was made by clear and convincing evidence had no valid claim of error because the court adopted a stricter standard than may have been necessary.

6. *See, e.g., United States v. Wright*, 873 F.2d 437, 441–42 (1st Cir.1989); *United States v. Prescott*, 920 F.2d 139 (2d Cir.1990); *United States v. McDowell*, 888 F.2d 285, 290–291 (3d Cir.1989); *United States v. Watford*, 894 F.2d 665, 671 (4th Cir.1990); *United States v. Aguilera–Zapata*, 901 F.2d 1209, 1215 (5th Cir.1990); *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir.1990); *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989); *United States v. McDougherty*, 920 F.2d 569 (9th Cir.1990); *United States v. Frederick*, 897 F.2d 490, 492 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990); *United States v. Terzado–Madruga*, 897 F.2d 1099, 1125 (11th Cir.1990); *United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir.1989).

and because the government failed to include 30 plants, which Malbrough admitted were stolen three weeks before the seizure. Although there is evidence that Malbrough manufactured more than 100 marijuana plants, there was also evidence that the government agents failed to distinguish tomato and marijuana plants and included both marijuana and tomato cuttings in determining the total number of marijuana plants. Accordingly, we cannot conclude that the court's finding of 75 plants is clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

We affirm the judgment of the district court.