UNITED STATES of America, Appellee,

v.

Timothy Paul PARKER, Appellant.

UNITED STATES of America, Appellee,

v.

William August PARKER, Appellant.

Nos. 93–3236, 93–3273.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1994.

Decided Aug. 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied in No. 93–3273
Oct. 20, 1994.

Frank Burnette and Andrew J. Dunn, Des Moines, IA, argued, for appellant.

Gary L. Hayward, Des Moines, IA, argued (Cliff Wendel, on brief), for appellee.

Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Timothy Paul Parker and William August Parker appeal from final judgments entered in the District Court[1] for the Southern District of Iowa finding them guilty, upon jury verdicts, of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). For reversal, appellants argue that the district court erred in (1) denying their motions to suppress certain physical evidence, (2) finding there was sufficient evidence to support the jury verdicts of conspiracy to distribute drugs, (3) admitting certain expert opinion testimony, (4) refusing to give a "lesser included offense" instruction, (5) refusing to give an "addict-informer" instruction, and (6) giving an instruction allowing an inference of intent to distribute drugs based on possession of a large quantity of drugs. For the reasons discussed below, we affirm the judgments of the district court.

## I. BACKGROUND

On February 3, 1992, Phyllis Salts delivered a duffel bag to United Parcel Service (UPS) in Ottumwa, Iowa, for delivery to Timothy Parker in California, and insured it for $4,000.00. UPS opened the package to ensure it was packed correctly pursuant to its standard policy of inspecting packages insured for more than $1,000.00. UPS discovered $4,000.00 cash in the package and notified the United States Drug Enforcement Administration (DEA). The DEA did not inspect the package but asked UPS to ship the package and notify them of any return package to the Ottumwa area from the vicinity of the California address.

On February 7, 1992, UPS notified the DEA of a return package. The unopened package was delivered by UPS to the DEA office where a drug dog tried to open the package, indicating the package contained narcotics. The police obtained a search warrant, opened the package and discovered over 100 grams of methamphetamine and a note to "Billy" from "Tim" which stated "Hi! You'll like it. The white is better as far as I'm concerned, but this is pretty good. 16 × 4 equals 6,400." Timothy Parker's fingerprints were found on the note.

The DEA removed most of the methamphetamine, dusted the contents with fluorescent powder and inserted a device into the package that would signal when the package was opened. A controlled delivery was made to the address indicated on the package, the residence of William Parker. The officers executed a search warrant for the premises after the device alerted that the package had been opened. A black light was used to determine that William Parker and another individual named Scott Hootman had come into contact with the fluorescent powder placed on the drugs within the package.

Appellants and Phyllis Salts[2] were charged with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Appellants claimed the initial search by UPS of the duffel bag containing $4,000.00 cash was a warrantless search by a private party acting as an agent of the government in violation of the Fourth Amendment, and moved to suppress the $4,000.00 cash, the package containing the methamphetamine and all items seized as a result of the search warrant. The district court found that there was no showing that the government knew of the action by UPS and that UPS did not intend to further the government's interests by initially opening the package, and denied the motions to suppress.

Scott Hootman was granted immunity and testified during the trial that he had purchased methamphetamine from William Par-

---

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

2. Salts pleaded guilty before trial.

ker several times over a period of one to two years. Another acquaintance of William Parker, Ned Jeffrey, also testified at trial that he had purchased methamphetamine from William Parker several times, both for personal use and to sell as a dealer. Ned Jeffrey testified that William Parker told him that his brother Timothy Parker was his source, and that he subsequently purchased methamphetamine directly from Timothy Parker. The government introduced into evidence the methamphetamine and the note found in the package, documentation showing prior shipments of express mail packages and Western Union money transfers between William and Timothy Parker. Special Agent Jerry Nelson of the Iowa Department of Public Safety, Division of Narcotics Enforcement, testified as an expert at trial that the note found in the package and certain notations made in a notebook found in William Parker's residence were consistent with records of drug transactions, that is, "drug notes." The district court overruled defense objections that this testimony was an improper comment on the evidence and improper opinion testimony.

Appellants were represented by separate defense counsel but presented a coordinated defense. Appellants proposed two jury instructions which the district court refused to give. The first was a "lesser included offense" instruction for simple possession. The second was an "addict-informer" instruction which would have cautioned the jury to examine with "greater care and caution" the testimony of Hootman and Jeffrey, both of whom admitted under cross-examination that they suffered from memory loss and hallucinations as a result of many years of drug use. Appellants also objected to a "large quantity inference" instruction that provided that the jury could infer the intent to distribute drugs from possession of a large quantity.

At the close of the government's case, appellants moved for directed verdicts and the district court denied the motions. The jury found each appellant guilty on both counts, and the district court sentenced each to 87 months of imprisonment, 5 years of supervised release and a special assessment of $100.00. These appeals followed and were consolidated.

## II. SEARCH BY UPS

■ Appellants first argue the district court erred in denying their motions to suppress because the search by UPS implicates the Fourth Amendment. They contend that UPS was operating as an agent of the government when UPS employees cooperated with the DEA for purposes that furthered only the interests of the government. The government argues that the search was a private search conducted pursuant to a UPS policy to open packages insured for over $1,000.00 in order to ensure that they are properly packaged. Rather than acting as an agent of the government, the government argues that UPS notified the DEA of suspected criminal activity discovered during a routine inspection and cooperated with the investigation by watching for the return package.

■ We review the district court's denial of the motion to suppress evidence for clear error. *United States v. Chadwick,* 999 F.2d 1282, 1284 (8th Cir.1993); *United States v. Walther,* 652 F.2d 788, 791 (9th Cir.1981) (*Walther*). A search by a private party not acting as an agent of the government does not implicate the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Walther,* 652 F.2d at 791. Whether a private party is acting as an agent of the government depends on the degree of the government's participation in the private party's activities. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989) (the fact that the government does not compel the private party to search does not establish that the search is private for purposes of the Fourth Amendment); *Walther,* 652 F.2d at 791–92.

Two critical factors in assessing whether a private party acts as an agent of the government are (1) the government's knowledge of and acquiescence in the search, and (2) the intent of the party performing the search. *United States v. Malbrough,* 922 F.2d 458, 462 (8th Cir.1990) (police informant directed to participate in narcotic purchases discover-

ed marijuana while trespassing on private property; held to be a private search), *cert. denied*, 501 U.S. 1258, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991); *Walther*, 652 F.2d at 790–92 (DEA informant, who was routinely paid for discovering drugs, was acting as a government agent when he opened a package for the sole purpose of searching for drugs). Here, the government did not direct UPS to open the package addressed for delivery to California; UPS opened the package pursuant to its policy to inspect the packaging of packages insured for more than $1,000.00. The present case is factually similar to *United States v. Livesay*, 983 F.2d 135 (8th Cir. 1993). In that case, UPS employees notified police after they opened a package pursuant to a company policy to check for hazardous chemicals and found $3,200.00 in cash. Like the present case, UPS notified police of the return package, which was opened pursuant to a search warrant. This court affirmed the district court's denial of the motion to suppress evidence because there was no evidence that UPS had opened the package for any reason other than its concern about hazardous chemicals. 983 F.2d at 136–37. The district court correctly denied the motions to suppress.

## III. SUFFICIENCY OF THE EVIDENCE OF CONSPIRACY

■ Appellants next argue that there was insufficient evidence for a reasonable jury to find beyond a reasonable doubt that a conspiracy existed to distribute methamphetamine. They argue that the only basis for the verdicts was the testimony of Scott Hootman and Ned Jeffrey, both of whom testified that they were heavy drug users and suffered from memory loss due to a history of drug use. Appellants argue that the DEA did not conduct any controlled buys, there was no evidence of what was contained in any of the other express mail packages, there was no evidence concerning use of the money associated with the Western Union transfers, and no drug trafficking paraphernalia was seized from William Parker's residence. The government contends that there was sufficient evidence in the record to support the jury's verdicts. We agree with the government.

The government had the burden of proving beyond a reasonable doubt that appellants knowingly and voluntarily participated in an agreement to distribute methamphetamine. *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir.1989). "The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Burks*, 934 F.2d 148, 151 (8th Cir.1991). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *Id.* "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *Id.* "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. Burks*, 934 F.2d at 151.

■ Appellants' argument is essentially an attack on the credibility of the governments' witnesses. Credibility of witnesses is a matter for the jury. *United States v. Brown*, 921 F.2d 785, 792 (8th Cir.1990). There is sufficient evidence in the record to support the jury's verdicts. In addition to the testimony of Scott Hootman and Ned Jeffrey, there was the note in the package sent to William Parker bearing Timothy Parker's fingerprints, as well as testimony from Special Agent Jerry Nelson concerning notations in a notebook found at William Parker's residence. The note in the package specifically alluded to the color of the drugs and stated that they were brown this time instead of white; a jury could justifiably find from this that this package was part of an ongoing series of drug transactions. The notebook seized from William Parker's residence contained entries that the jury could have rea-

sonably concluded were drug notes. As discussed below, the jury was properly instructed that they could infer the intent to distribute based on possession of a large quantity of drugs. The express mail and Western Union transfer receipts provided additional evidence for the jury verdicts finding beyond a reasonable doubt that appellants had conspired to distribute methamphetamine.

## IV. OPINION TESTIMONY

■ Appellants argue that the district court abused its discretion in allowing Special Agent Jerry Nelson to testify as an expert that certain entries in a notebook were "drug notes."[3] Appellants contend that this testimony was an improper comment on the evidence and improper opinion testimony. The government contends that the testimony did not go beyond the scope of opinion testimony permitted by Fed.R.Evid. 702. We agree with the government.

■ The district court has broad discretion to admit expert testimony. *United States v. Boykin,* 986 F.2d 270, 275 (8th Cir.) (*Boykin*), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *United States v. Sparks,* 949 F.2d 1023, 1026 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992). A trial court can allow testimony in the form of an opinion if the specialized knowledge of the witness would help the jury to understand the evidence or determine a fact in issue. *Boykin,* 986 F.2d at 275, *citing United States v. Daniels,* 723 F.2d 31, 33 (8th Cir.1983) (opinion testimony admissible even if it embraces an ultimate issue to be decided by the jury). In *Boykin* we held that the district court did not err in allowing testimony of a police officer regarding the *modus operandi* of drug trafficking and use of drug paraphernalia. 986 F.2d at 275; *see, e.g., United States v. Echeverri,* 982 F.2d 675, 680 (1st Cir.1993) (expert witness interpreted a handwritten column of numbers as a drug ledger);

*United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1384 (9th Cir.1991) (expert witness identified a pay/owe sheet as record of sales of narcotics); *United States v. Harris,* 903 F.2d 770, 775 (10th Cir.1990) (expert witness testified that documents had characteristics similar to those known to be used in drug enterprises). We hold the district court did not abuse its discretion in allowing Special Agent Jerry Nelson's expert testimony concerning the notes because it concerned specialized knowledge about drug trafficking, an area with which most jurors are unfamiliar. *Boykin,* 986 F.2d at 275. Furthermore, the jury was properly instructed on the credibility and consideration of expert testimony.

## V. JURY INSTRUCTIONS

■ We review the formulation of jury instructions by the district court for abuse of discretion. *United States v. Cheatham,* 899 F.2d 747, 751 (8th Cir.1990). The defendant is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, correctly state the applicable law and adequately and fairly cover the substance of the requested instruction. *Id.*

### A. Lesser Included Offense Instruction

■ Appellants argue that the district court abused its discretion in refusing to give their proffered instruction on the lesser included offense of simple possession of methamphetamine. The government argues that there was no evidence to support a verdict of possession for any reason other than sale or distribution.

The rule on lesser included offense instructions is as follows:

A defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) *there*

---

**3.** During direct examination by the prosecutor, Special Agent Jerry Nelson responded as follows:

Q. And what type of notes did you make a determination existed?
A. I determined that one page of the notebook, 6E, that there were drug notes.
. . . .

Q. How did you make that determination that they would be drug notes?
A. Based upon my training and interviewing defendants that have cooperated and through my schooling, I have basically went through and found that through these notes that they appear to be drug notes.

*is some evidence which would justify conviction of the lesser offense;* (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or the defense.

*United States v. Thompson,* 492 F.2d 359, 362 (8th Cir.1974) (*Thompson*). Appellants rely on *United States v. Brischetto,* 538 F.2d 208 (1976) (*Brischetto*), to support their argument. In *Brischetto* the court applied the rule from *Thompson* and held it was reversible error for the district court to fail to give the lesser included offense instruction for simple possession where there was a dispute in the evidence with respect to the issue of the defendant's intent to distribute a large quantity of marijuana (thus satisfying element three of the rule from *Thompson*). *Id.* at 210.

The present case is distinguishable from *Brischetto.* In *Brischetto* there was some evidence that would have supported a simple possession charge: the defendant testified on his own behalf concerning knowledge of the drugs, and the only evidence other than the testimony of accomplices was the amount of marijuana. In the present case, however, there was no evidence of acquisition for personal use and independent physical evidence (the note enclosed in the package with the methamphetamine, the seized notebook containing entries characteristic of drug notes, documentation showing prior shipments of express mail packages and Western Union money transfers between William Parker and Timothy Parker), in addition to more than 100 grams of methamphetamine seized and the testimony about distribution from witnesses who were not accomplices (Hootman and Jeffrey), to support the charge of possession with intent to distribute.

The present case is similar to *United States v. Short,* 805 F.2d 335, 337 (8th Cir. 1986), where we held that the lesser included offense instruction was not warranted in the absence of evidence that a large quantity of marijuana was for the defendants' personal use. We hold that the district court did not abuse its discretion in refusing to give the lesser included offense instruction for simple possession.

## B. Addict–Informant Instruction

■ Appellants argue that the district court abused its discretion in refusing to give their proposed instruction advising the jury to view the testimony of Scott Hootman and Ned Jeffrey with greater caution because they were admitted heavy drug users who suffered from memory loss and hallucinations.[4] The government argues that the district court correctly refused the proposed instruction because there was no evidence that Hootman and Jeffrey were ever addicted to drugs and there was no evidence they were addicted at the time of trial. The government further notes that Hootman and Jeffrey were subject to cross-examination and their testimony was not the sole basis for conviction.

Addict-informant instructions "suggest factors unique to an addict-informant which might have a particular bearing on his [or her] credibility." *United States v. Hoppe,* 645 F.2d 630, 633 (8th Cir.) (citations omitted), *cert. denied,* 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981). There is no *per se* rule in this circuit mandating an addict-informant instruction, *id.,* and the following factors may obviate the need for such an instruction: "a dispute as to whether the informant is actually an addict; cross-examination concerning the informant's addiction; an instruction alerting the jury that an infor-

---

4. The proposed instruction stated:

The testimony of someone who is shown to have used addictive drugs or alcohol during the period of time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.

The jury must determine whether the testimony of the drug or alcohol abuser has been affected by the drug or alcohol use or the need for drugs or alcohol.

You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

mant's testimony should be viewed with care; and corroboration of the informant's testimony." *Id.* The first two factors are present here. There was no evidence that either Hootman or Jeffrey was addicted to drugs at the time of trial (although each testified that he suffered from memory loss due to heavy drug use over many years). Both witnesses were thoroughly cross-examined with regard to their prior use of drugs. The district court did not abuse its discretion in refusing to give the proffered "addict-informant" jury instruction.

### C. Large Quantity Inference Instruction

 Finally, appellants argue that the district court committed reversible error by instructing the jury that they could infer intent to distribute from possession of a large quantity of methamphetamine.[5] Appellants argue that this instruction violates the Due Process Clause because it included a mandatory inference and thus relieved the government of the burden of proving intent to distribute. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 523–24, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). We disagree. The instruction as given contained a permissive and not a mandatory inference. The instruction explicitly informed the jury that they "may, but are not required to, find or infer that the defendant intended to distribute" based on possession of a large quantity of methamphetamine.

Appellants cite several cases from other circuits in support of their argument, in particular the Ninth Circuit.[6] This circuit, however, has approved giving a permissive inference instruction of intent to distribute drugs based on possession of a large quantity. *United States v. Brown,* 921 F.2d at 792; *United States v. Brett,* 872 F.2d 1365, 1369–70 (8th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). In the absence of evidence that drugs are for personal use, possession of a large quantity can be indicative of intent to distribute. The district court did not abuse its discretion in instructing the jury on a permissive inference of intent to distribute based on possession of a large quantity of methamphetamine.

Accordingly, the judgments of the district court are affirmed.

---

5. Jury Instruction 21 stated:
In considering whether the government has proved beyond a reasonable doubt all elements of Count 2, as set forth in Instruction No. 18, you may consider that possession of a large quantity of methamphetamine may support an inference of an intent to distribute. In determining whether a defendant possessed methamphetamine with intent to distribute it, you may consider whether that defendant possessed a small or large quantity of methamphetamine. If the evidence convinces you beyond a reasonable doubt that a defendant possessed a large quantity of methamphetamine, you may, but are not required to, find or infer that the defendant intended to distribute the methamphetamine.

6. *E.g., United States v. Chu,* 988 F.2d 981, 984 (9th Cir.1993) (improper instruction that knowledge of possession could be inferred from possession of a large quantity not harmless error because it allowed a single piece of evidence to be determinative of guilt); *United States v. Rubio-Villareal,* 967 F.2d 294 (9th Cir.1992) (banc) (improper instruction that guilt could be inferred from isolated facts that defendant was the driver and drugs were concealed in the body of the vehicle not harmless error because there is a reasonable possibility it materially affected verdict); *United States v. Sanchez-Robles,* 927 F.2d 1070 (9th Cir.1991) (improper instruction that guilt could be found based on willful ignorance of facts not harmless error even though there was direct evidence of guilt).