# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3485

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Lamont O. Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 2004
Filed: September 3, 2004

_____

Before WOLLMAN, HEANEY, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Lamont Smith was convicted of one count of possession with the intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841. He was sentenced by the district court[1] to 120 months' imprisonment. On appeal, Smith argues (1) that the district court erred in denying his motion to suppress and (2) that the district court erred in permitting a previously undisclosed witness to testify on rebuttal. We affirm.

---

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

**I.**

**A.**

On April 13, 2001, Hawthorne, California, police officer Melanie Newenham, who was participating in a "parcel interdiction" operation at a Federal Express ("FedEx") facility in Hawthorne, removed a suspicious looking package from a conveyor belt. After removing the package, she gave it to Detective Julian Catano, who, also believing the package to be suspicious, decided to submit it to a canine sniff. The dog alerted to the package, signifying that it contained illegal drugs. Detective Catano took the package to Lee Edwards, the FedEx facility manager, and told her that he suspected that the package contained drugs. Edwards asked whether Catano wanted her to open the package. Detective Catano testified that he told her that "if she wanted to open it that would be fine . . . ." Edwards opened the box, revealing a pair of children's rubber boots. Inside one of the boots, she found a ball of clear tape containing a white substance. Detective Catano and Officer Newenham took the package to the Hawthorne police station, where it and its contents were examined and photographed. The package was later resealed and returned to the FedEx facility for controlled shipment to the recipient address in Lincoln, Nebraska. Controlled delivery was executed at the recipient address, where the package was accepted by Smith, who identified himself by the alias "Sergio."

Smith moved to suppress the cocaine base found in the package. The district court denied the motion, adopting the recommendation of the magistrate judge.[2] We review de novo the district court's interpretation of the protections afforded by the Fourth Amendment, and we review for clear error its factual determinations. United States v. Lothridge, 332 F.3d 502, 503-04 (8th Cir. 2003).

---

[2]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

B.

Smith contends that Officer Newenham unlawfully seized the package. A law enforcement officer must have reasonable suspicion that a piece of mail, or a package shipped via a commercial carrier, contains contraband to lawfully seize it for investigative purposes. United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999). Seizure occurs when a package is removed from its ordinary progress in the mail and is diverted for further investigation. Id. An officer has reasonable suspicion that a package contains contraband if she has "a particularized and objective basis" that is more than an "inchoate and unparticularized suspicion or hunch." Id. (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). The officer must be able to explain the basis of her suspicion. Id. at 604. The officer may cite as the basis of her belief, however, facts which, alone and to an untrained eye, appear innocuous, but which, to a trained officer familiar with the methods of drug traffickers, are sufficient to establish reasonable suspicion. Id.; United States v. Demoss, 279 F.3d 632, 636 (8th Cir. 2002).

We turn to the question whether Officer Newenham had reasonable suspicion that the package contained contraband when she seized it. We conclude that she did. She was able to articulate a number of factors that led to her conclusion: the package was sent from California; it was a Sony cordless telephone box; its air bill was handwritten; it was shipped via overnight delivery; and it was marked for optional Saturday delivery. After lifting the package from the conveyor belt, which was not in and of itself a seizure, Demoss, 279 F.3d at 635, Newenham observed that the sender's address had been scratched out and rewritten and that the cost of shipping had been paid in cash. Taken individually, each of the foregoing facts is consistent with innocent conduct. Indeed, taken collectively, the coexistence of these characteristics might well be seen as innocent by the average citizen. Newenham's training and experience, however, gave her a reasonable basis for her determination that the package was suspicious. She knew that the package was shipped from a drug source state. She knew that the type of telephone is commonly available throughout

-3-

the United States, and she was therefore suspicious as to why someone would choose to ship one via FedEx, especially given the high cost of overnight and Saturday delivery – approximately $35 for shipping versus approximately $60 for the phone. She knew that drug traffickers commonly use overnight and Saturday delivery to minimize the amount of time illicit materials are subject to investigation by the shipping company. She knew that drug traffickers commonly wait until the last possible moment to address packages containing drugs by hand to reduce the likelihood that the recipient's address will be discovered if the shipper is stopped by a law enforcement officer. She thought it suspicious that a sender would make an error in writing his or her own address. And she knew from her training and experience that drug traffickers often pay for shipping in cash. These facts provided Newenham with a "particularized and objective basis" for seizing the package, and thus she did not act on the basis of some "inchoate and unparticularized suspicion or hunch." Terry, 392 U.S. at 27; United States v. Logan, 362 F.3d 530, 533-34 (8th Cir. 2004) (noting that drug source state, overnight shipping, and handwritten air bill contribute to finding of reasonable suspicion that a package contained contraband). Thus, her seizure of the package was lawful.

C.

We next consider Smith's argument that Lee Edwards acted as an agent of the government in opening the box, thereby tainting discovery of the cocaine base. A search by a private citizen is not subject to the strictures of the Fourth Amendment unless that private citizen is acting as a government agent. United States v. Malbrough, 922 F.2d 458, 461-62 (8th Cir. 1990). We look to several factors in determining whether a private citizen was acting as an agent of the government. Chief among these are whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request. Id. at 462 (citing United States v. Miller 688 F.2d 652, 656-57 (9th Cir. 1982)); United States v. Hollis, 245 F.3d 671, 674 (8th Cir. 2001); United

-4-

States v. Parker, 32 F.3d 395 (8th Cir. 1994). Because the government certainly knew of, and acquiesced in, the opening of the package, this is a much closer case than Malbrough, Hollis, and Parker. The testimony established, however, that Detective Catano made it clear that he was not asking or ordering Edwards to open the package. There is no evidence that Edwards felt she was obligated to open the package. We conclude therefore that the government's knowledge and acquiescence, when considered in light of Catano's communication to Edwards that the decision was her's alone to make, did not make Edwards a government agent for the purposes of the Fourth Amendment. Cf. United States v. Kinney, 953 F.2d 863, 865 (4th Cir. 1992); United States v. Feffer, 831 F.2d 734, 739 (7th Cir. 1987); Gold v. United States, 378 F.2d 588 (9th Cir. 1967).

With respect to the question of intent, the district court found that Edwards's decision to inspect the package, even if accompanied by a dual motive of assisting the officers, was motivated by her obligation to ensure that her employer was not being used as a means of carrying contraband. As the Supreme Court has pointed out, a commercial carrier such as FedEx has a "duty to refrain from carrying contraband," and such a carrier's employees may act to ensure compliance with that duty. Illinois v. Andreas, 463 U.S. 765, 769 n.1 (1983). That a private citizen is motivated in part by a desire to aid law enforcement does not in and of itself transform her into a government agent. Malbrough, 922 F.2d at 461-62 (holding that informant who trespassed with the intent to find out if marijuana was being grown was not a government agent for the purposes of the Fourth Amendment); see also Coolidge v. New Hampshire, 403 U.S. 443, 488 (1971) ("[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals."). Given the absence of evidence that Edwards was motivated solely or even primarily by the intent to aid the officers, we conclude that the district court's factual finding that she opened the package out of her desire to ensure that her company was not being used as a vehicle

in the drug trade was not clearly erroneous. Thus, the district court did not err in denying the motion to suppress.

## II.

We next consider Smith's argument that the district court erred in permitting certain rebuttal testimony. After the government rested its case-in-chief, it became aware of a potential rebuttal witness, Delores Schmidt. In an interview, Schmidt stated that she knew a man named "Sergio," with whom she had conducted numerous drug transactions. Believing that "Sergio" was actually Smith, the government desired to offer Schmidt's testimony under Fed. R. Evid 404(b) to rebut Smith's claim that the package of drugs had been mistakenly shipped to him.

Smith contends first that the district court erroneously permitted Schmidt to testify under Rule 404(b). We review de novo the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling. United States v. Blue Bird, 372 F.3d 989, 993 (8th Cir. 2004). Because Rule 404(b) is a rule of inclusion, we presume that evidence of "other crimes, acts, or wrongs" is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, unless the party seeking its exclusion can demonstrate that it serves only to prove the defendant's criminal disposition. United States v. Campa-Fabela, 210 F.3d 837, 840 (8th Cir. 2000). Other crimes evidence is admissible if it is relevant to a material issue, the other crimes are similar and reasonably close in time to the charged crime, the evidence is sufficient to support a jury's finding that the defendant committed the other crimes, and the probative value of the evidence is not substantially outweighed by unfair prejudice. United States v. Carroll, 207 F.3d 465, 469 n. 2 (8th Cir. 2000). Schmidt's testimony satisfies the first of Carroll's requirements: it was clearly relevant to a material issue (Smith's knowledge of drug dealing), it concerned events that were similar in kind and close in time to the charged

crime, and it was sufficient to support a jury determination that Smith was involved in drug transactions with Schmidt.

With respect to the question of unfair prejudice, there was little chance that the jury would misuse the testimony in light of the instruction limiting its consideration to the issues of  knowledge and mistake – two proper uses of other crimes evidence and two issues made relevant by Smith's defense. Lothridge, 332 F.3d at 504.  Smith argues, however, that he suffered unfair prejudice because he was not given reasonable notice before trial of the government's intention to introduce Schmidt's testimony.  Rule 404(b) provides, in pertinent part, that "the prosecution . . . shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown . . . ."  Essentially, Smith argues that the district court improperly concluded that the government's explanation – that it simply did not have actual knowledge of the existence of Schmidt's proffer – satisfied the good cause requirement of the Rule.

There has been no allegation that the government intentionally withheld notice from Smith or his attorney.  Rather, it appears from the record that Schmidt's proffer was obtained and filed independently of the investigation of Smith.  It was only after Schmidt's reference to "Sergio" was matched with Smith's self-identification as "Sergio" when receiving the FedEx package that the government realized that her testimony might be relevant to Smith's trial.  The government immediately informed Smith's attorney of Schmidt's proffer, and he was given access to question her. Smith argues that, not withstanding the government's prompt notice, he was unfairly prejudiced because his theory of the case, which his attorney outlined to the jury during his opening statement, was vitiated by her testimony.  He maintains he was faced with a "Hobson's choice" or "Catch-22" situation, unfairly forcing him to choose between continuing with his theory of the case and attempting to minimize the damage of Schmidt's testimony or else changing his theory of the case and risking the

ire of the jury for failing to deliver on the representations he made in his opening statement.

We conclude that the district court did not abuse its discretion in concluding that the government had demonstrated good cause for its failure to disclose Schmidt's testimony.  In a perfect world, the government would have been aware of, and would have disclosed, her proffer earlier.  But we do not live in a perfect world, and a criminal defendant is not guaranteed a perfect trial, just a fair one.  United States v. Flores, 73 F.3d 826, 832-33 (8th Cir. 1996) (quoting Bruton v. United States, 391 U.S. 123, 135 (1968)).  The discovery of Schmidt's proffer was "simply one of those unexpected developments that occurs in the course of a trial."  Id. at 832.  The unexpected development did require Smith and his attorney to make some difficult strategic decisions in the midst of trial, but that defendants are faced with such decisions at inopportune times does not necessarily require the exclusion of evidence.  United States v. Spence, 125 F.3d 1192, 1194 (8th Cir. 1997) (holding that the district court's decision to defer ruling on a motion to exclude "other crimes" evidence until the middle of the trial was not an abuse of discretion despite the fact that it potentially required defendant to adapt his trial strategy accordingly).

The judgment is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent from section I.C. of the majority's opinion.  It is clear from the record that Lee Edwards, a FedEx employee, only became involved in the investigation of Smith's package at the behest of the government, and only after the government realized that it could not constitutionally undertake a further search of the package without first obtaining a warrant.  To allow the government to employ private individuals to perform searches in a manner that the government itself legally could not, does not conform to my concept of constitutionally acceptable conduct.

On Friday, April 13, 2001, a number of police officers were stationed at the FedEx shipping facility in Hawthorne, California to investigate potential drug trafficking. As explained by Officer Melanie Newenham, she was stationed at a large conveyor belt, watching for what she considered to be suspicious packages. Smith's package caught her eye because of its distinct box and a sticker indicating that the sender had requested Saturday delivery. When she removed the package from the belt, she saw that it had a handwritten airbill, scratched-out address form, was paid for in cash, and was a person-to-person delivery. Based on her training and experience, including her belief that California was a source state for drugs, she decided to have Detective Julian Catano conduct further investigation of the package.

Catano agreed that the box looked suspicious. He called on his canine partner, Bailey, to sniff the box for the odor of drugs. Bailey alerted to the box, indicating to Catano that it contained narcotics. Despite his belief that the package contained drugs, Catano did not seek to procure a warrant, even though he recognized that he could not open the box himself without a warrant. Consequently, Catano brought the package to Lee Edwards, a FedEx employee and manager at the shipping facility. According to Catano, he next advised Edwards that he "had a suspicion that this package may contain something illegal and told her that we had a dog alert on it and pointed out some of the other indicators, at which time she asked me if I wanted her to open it." (Suppression Hr'g Tr. at 23.) In response to this query, Catano advised Edwards that it was "fine" for her to open the package if she so desired. (Id.) Under Catano's watchful eye, Edwards opened the package for him and found cocaine.

At oral argument, the government conceded that if Edwards was acting as a government agent, she violated Smith's Fourth Amendment rights by opening the box without a warrant. "A search by a private person becomes a government search 'if the government coerces, dominates, or directs the actions of a private person' conducting the search." United States v. Souza, 223 F.3d 1197, 1201 (10th Cir. 2000) (quoting Pleasant v. Lovell, 876 F.2d 787, 796 (10th Cir. 1989)). In order to

determine whether Edwards was acting as a government agent, we consider the totality of circumstances surrounding her conduct. United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003); Souza, 223 F.3d at 1201; accord United States v. Crowley, 285 F.3d 553, 558 (7th Cir. 2002) (instructing courts to determine whether a private party is acting as an instrument or agent of the government "on a case-by-case basis in light of all the circumstances"). "Two critical factors in assessing whether a private party acts as an agent of the government are (1) the government's knowledge of and acquiescence in the search, and (2) the intent of the party performing the search." United States v. Parker, 32 F.3d 395, 398 (8th Cir. 1994). Other important factors which inform this determination include whether the government requested that the search be performed, and whether the government offered to reward the private party for performing the search. United States v. Malbrough, 922 F.2d 458, 462 (8th Cir. 1990).

I agree with the majority that the government clearly knew of and acquiesced in the search; indeed, the search would not have happened but for the government's involvement. I cannot agree, however, that Edwards intended to further her own ends by opening the package. No evidence adduced at the suppression hearing supports such an inference. Edwards did not testify, and no other testimony established any motive for her action beyond helping law enforcement. This case is distinct from Parker, in which a UPS employee opened a box and discovered a large amount of cash that eventually led to a drug seizure. In that case, our court held that the employee was not a government agent because "UPS opened the package pursuant to its policy to inspect the packaging of packages insured for more than $1,000.00." Parker, 32 F.3d at 399. The majority suggests that it was permissible for Edwards to open the package pursuant to FedEx's "'duty to refrain from carrying contraband.'" Ante at 5 (quoting Illinois v. Andreas, 463 U.S. 765, 769 n.1 (1983)). To my mind, this misses the point: Smith does not argue that Edwards could not open the package; rather, he argues that the *government* could not open the package, and that Edwards was acting as an agent of the government. And while Edwards may well have

-10-

harbored many appropriate motivations for opening the box, the record contains none of them. Only Catano and Newenham were called to testify, and Newenham indicated that she had no contact with Edwards. Thus, we are guided in our analysis only by the testimony of Catano. Catano stated that after he and his fellow officers extinguished their ability to search the package without a warrant, he physically brought the box to Edwards. He told her that a number of factors indicated to him that the package contained drugs. In so doing, Catano was not simply relaying information, but attempting to evoke some response.[3] Edwards herself recognized as much, and asked Catano if he wanted her to open the box. According to his testimony, Catano replied "that if she wanted to open it that would be fine."[4] (Suppression Hr'g Tr. at 23.)

I find this case similar to United States v. Souza, 223 F.3d 1197 (10th Cir. 2000). There, government agents were stationed at a UPS facility for training purposes. One agent, Detective Sloan, found a package he considered to be suspicious, so he pulled it off of the conveyor belt. Special Agent Rowden then inspected the package, and had his drug dog sniff the package. The dog alerted to the package, and the agents began the process of getting a search warrant. In the meantime,

> a UPS employee, April Denning, arrived on the scene. According to Denning's testimony, a conversation was initiated by Detective Sloan who told her that a narcotics dog had alerted to the package and "stated

---

[3]Catano testified that it was his practice to bring suspicious packages to FedEx employees to see if they would open the packages before he tried to obtain a warrant.

[4]The majority notes that Catano "made it clear that he was not asking or ordering Edwards to open the package." Ante at 5. While he may not have directly asked her to open the box, the insinuation was unmistakable. We would be remiss to focus on the presence or absence of magic words in determining whether an officer encouraged or instructed a private party to perform a search.

-11-

that they couldn't tell me to open the package, they were not authorized to do that, they would have to have a search warrant, but he pointed to where the package was." A couple of minutes later, another officer again told Denning, "I cannot tell you to not open the package, but there it is on the floor."

Souza, 223 at 1200. Denning began opening the package, and with the assistance of the agents, found methamphetamine inside.

In reviewing the legality of Denning's search, the court noted that the first issue to consider was whether Denning, although a UPS employee, was nonetheless acting as a government agent. The court answered in the affirmative for three reasons: 1) government agents initiated the seizure of the box; 2) officers encouraged Denning to open the box; and 3) agents physically assisted Denning with the search. Id. at 1202. It also recognized that "[w]hile companies such as UPS have legitimate reasons to search packages independent of any motivation to assist police, there is no evidence that in this instance Denning had a legitimate, independent motivation to open the package." Id. (citation omitted).

Had Edwards (or any other qualified party, for that matter) testified that she was motivated by some cause other than to assist Catano, I would agree with the majority that she was not an agent or instrumentality of the government. This is not the case. Instead, we are required to infer Edwards's intent in opening the package. The majority sees fit to speculate that Edwards's goal in performing the search was to ensure that FedEx was not shipping contraband. It may be true that Edwards was motivated by some principle other than to assist law enforcement when she searched Smith's package. She may well have sought to keep drugs out of FedEx's facilities, or she may have sought to expedite the search so that the package would arrive on time. I have found no evidence to indicate as much, however, and cannot agree that the such conjecture survives scrutiny when measured by the testimony adduced at the suppression hearing. We cannot invent a motive for Edwards's search which is not

-12-

supported by the record.  I would reverse the district court's finding that Edwards undertook the search for the benefit of FedEx and was thus acting in her private capacity.  Her actions were motivated, overseen, and in part directed by law enforcement officers.  She was acting on behalf of the government when she opened Smith's package, and thus could not constitutionally do so without a warrant.  The district court's holding to the contrary was error, and I thus dissent from that portion of the majority's affirming opinion.

_____