**UNITED STATES of America,
Plaintiff,**

v.

**Harold Lindsey WEBSTER, Defendant.**

No. 4:05–cr–00255.

United States District Court,
S.D. Iowa,
Central Division.

July 31, 2007.

---

John S. Courter, United States Attorney, Des Moines, IA, for Plaintiff.

Alfredo G. Parrish, Parrish Kruidenier Moss Dunn Boles Gribble & Cook LLP, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

PRATT, Chief Judge.

Before the Court is a Motion to Dismiss filed by the Defendant, Harold Lindsey Webster, on April 27, 2007. Clerk's No. 49. The Government filed a resistance to the motion on May 8, 2007. Clerk's No. 51. The Defendant filed a reply to the Government's resistance on May 9, 2007. Clerk's No. 53. After being continued twice at the request of the parties, a hearing on this matter was held on July 25, 2007. Clerk's No. 67. The matter is fully submitted.

## I. PROCEDURAL BACKGROUND

On December 6, 2005, the Defendant was charged with knowingly and intentionally possessing 50 grams or more of "crack" cocaine base with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). Clerk's No. 2. The Defendant filed a motion to suppress evidence on August 23, 2006 (Clerk's No. 23), for which a hearing was held on October 10, 2006. Clerk's No. 31. The Court denied the Defendant's motion on October 30, 2006. See Clerk's No. 35. Trial in this matter was subsequently continued on the parties' motion, and is currently scheduled for the next trial period beginning August 27, 2007. See Clerk's No. 62.

## II. FACTUAL BACKGROUND

The Indictment in this case stems from an alleged controlled drug buy and the subsequent arrest of the Defendant that occurred on October 28, 2005. The Government claims that law enforcement, using a confidential informant, made two controlled buys of "crack" cocaine from the Defendant prior to the October 28, 2005 buy and arrest. The October 28, 2005 events led to the seizure of evidence from the Defendant's vehicle, and also led to the execution of a search warrant on his residence where more alleged evidence of criminal activity was seized.[1] The Defendant was initially charged with State of Iowa drug offenses, but the state charges were dismissed after the Defendant was indicted in federal court.

At the hearing on this matter,[2] Officer Kelley Evans[3] of the Des Moines Police Department testified about the methods by which the vice and narcotics unit handles logistical matters. Officer Evans testified that he handles the destruction of drugs and other evidence, equipment matters, and deals with asset forfeitures. See Hr'g Tr. at 2. He also informed the Court that destruction of evidence occurs twice a year. Id. at 3. Officer Evans stated that,

---

1. The Court's Memorandum Opinion and Order denying the Defendant's motion to suppress evidence, issued on October 30, 2006, relates the factual circumstances surrounding the discovery and seizure of the evidence in this case in more detail. See Clerk's No. 35.

2. Pagination references to the transcript refer to the Court's unedited RealTime transcript.

3. Officer Evans has been with the Des Moines Police Department for twenty years. He graduated from a twenty-two week program at the Des Moines Police Academy, and is a certified peace officer in Iowa. He previously worked as a patrol officer for five years, and has spent the last fifteen years assigned to the vice and narcotics control section. He testified that he also has attended the two-week basic course offered by the Drug Enforcement Agency ("DEA"), a one-week course offered by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and several seminars given by the Polk County Attorney's Office. See Hr'g Tr. at 2.

when a destruction of evidence is initiated, each individual officer is given a printout of their locker [4] so they can verify whether the evidence can be destroyed. *Id.* After receiving verification from the local officers involved with the cases for which evidence will be destroyed, Officer Evans then examines the records of the Polk County Attorney's Office to assess the current disposition of those cases.

In regard to the drugs and other seized evidence in the Defendant's case,[5] Officer Evans testified that, when he checked the Polk County Attorney's Office records regarding the Defendant, the records showed that the State of Iowa criminal case against the Defendant was closed. *Id.* at 4. Officer Evans then marked the seized evidence as set to be destroyed, and included it with a packet of all cases where evidence was no longer needed for a state proceeding. He testified that he then sent the entire packet to the Polk County Attorney's Office to be reviewed by the Polk County Attorneys in the drug and gang unit.[6] *Id.* at 5.

Officer Evans subsequently received an order signed by Polk County District Court Judge Karen Romano directing destruction of all the evidence noted in the packet. *See* Gov't Ex. 3. He then destroyed all the evidence referenced in the order,[7] and completed an affidavit confirming its destruction. *See* Gov't Ex. 4. The drug evidence related to the federal charge against the Defendant was among the destroyed materials. The state case against the Defendant was dismissed[8] in December of 2005, after the federal indictment occurred, and the drug evidence was destroyed approximately five months later. Officer Evans testified that, if he knew the Defendant's case had been moved from Polk County District Court to the United States District Court, that he would not have applied for the order to destroy the drugs related to the case.[9] *See* Hr'g Tr. at 6–7.

4. "Locker" here refers to the evidence related to cases in which the officers are involved.

5. Although the indictment in this case charges the Defendant only with an offense related to distribution of "crack" cocaine, it appears that other types of evidence, including other drug evidence, was also seized and subsequently destroyed. *See* Gov't Exs.1 and 5.

6. Assistant Polk County Attorney Robert Diblasi testified that there are seven attorneys in the drug and gang bureau. *See* Hr'g Tr. at 16. He added that, as a general rule, the attorneys in the Polk County drug and gang bureau do not track the cases that have been transferred to federal court. *Id.* The Assistant Polk County Attorneys rely on the same internal records as those viewed by Officer Evans to assess whether a case against a defendant is still open, and Diblasi testified that if the records show that the state case against an individual is closed, then it is standard procedure to agree to the destruction of the evidence. *Id.* at 17. DiBlasi also signed and submitted the application for the destroy order to the Polk County District Court on behalf of the Polk County Attorney's Office. *See* Gov't Ex. 2. He further testified that the Polk County Attorneys only double-check to make certain the state cases are closed before agreeing that evidence can be destroyed, and that the Polk County Attorneys do not monitor what goes on in federal court. *Id.* at 23.

7. Officer Evans stated that evidence was destroyed, pursuant to the order, concerning hundreds of cases. *See* Hr'g Tr. at 13.

8. Assistant Polk County Attorney Diblasi testified that the state dismissal order, which was placed in the Defendant's state case file, indicated that the Defendant was being prosecuted by the federal government, but that he and the other Polk County Attorneys had no way to monitor the status of the case in federal court and he did not have the file with him when he went before Judge Romano seeking the destroy order. *See* Hr'g Tr. at 28–29.

9. Assistant Polk County Attorney Diblasi testified that he did not know the Defendant prior to the proceedings currently before this

Officer Evans further testified that the Des Moines Police Department relies on the local case officers to provide notice that a case has been transferred to federal court and to make certain that evidence relating to the federal case is not destroyed. *Id.* at 9. Nonetheless, no notice of a transfer was placed in the Defendant's case file by the local case agent, and Officer Evans was not informed of the transfer by the Polk County Attorney who was handling the state case against the Defendant prior to the transfer to federal court, or notified of the transfer by the local case agent. *Id.* Indeed, the local case agent assigned to the case signed off that the evidence could be marked for destruction. *See* Gov't Ex. 1.

Detective Daniel Davis was the link between the federal case and the local officials.[10] Detective Davis has been assigned full-time to a DEA task force for more than ten and one-half years. Detective Davis is the federal case agent assigned to the case, and was responsible for compiling the federal case file containing all relevant reports and laboratory testing results in this case. He testified that, to the best of his knowledge, all of the evidence in this case was sent to the Iowa Division of Criminal Investigation ("DCI") Criminalistics Laboratory for official analysis prior to its destruction, and that he has received a laboratory report that demonstrates that the drugs in this case were tested before their destruction and indicating the results. *Id.* at 33; *see* Gov't Ex. 5. Detective Davis had no role in the process that resulted in the destruction of the evidence in this case.

Detective Davis stated that his only role in the investigation into the Defendant's case was in regard to the decision to transfer the case to federal court. *See* Hr'g Tr. at 34. Detective Davis testified that he worked with the local case agent, Officer Steve Walters of the Des Moines Police Department and the Mid–Iowa Narcotics Task Force. *Id.* at 35. Based on certain criteria, like criminal history of the Defendant, the type of drugs involved, and the circumstances of the case, Detective Davis and Officer Walters decided to present the case to the United States Attorney's Office, which made the final decision to indict the Defendant in federal court. *Id.* at 35–36. Detective Davis further testified that, once the case was transferred to federal district court, he personally told Officer Walters that the Defendant had been indicted in federal court so that Officer Walters would make certain the drug evidence was maintained after the state charges were dismissed. *Id.* at 37–38. Detective Davis never had any contact with any of the members of the Polk County Attorney's Office. Detective Davis stated that Officer Walters personally informed him that the evidence related to the Defendant's case had been accidentally destroyed when they were discussing upcoming court proceedings in the case, and that this occurred sometime shortly after the evidence was destroyed on June 14, 2006. *Id.* at 39; *see* Gov't Ex. 4.

## III. LEGAL ANALYSIS

The Defendant argues that the failure of the various entities involved in this case to

---

Court, and that if he knew the case had been removed to federal court, he would not have included the evidence from the Defendant's case in the application for the destroy order. *See* Hr'g Tr. at 18–19.

**10.** Detective Davis is a member of the Polk County Sheriff's Office, and has been with

that office for over twenty-six years. He testified that he received eleven weeks of training at the Iowa Law Enforcement Academy, two weeks of basic training at the DEA academy, attended several week-long DEA programs, and puts in forty to eighty hours of in-service a year. *See* Hr'g Tr. at 32.

preserve the drug evidence amounts to a denial of his due process rights under the Fifth [11] and Fourteenth [12] Amendments of the United States Constitution. He further argues that, because drug quantity is an issue in this case that must be submitted to the jury, the destruction of the drug evidence also denies him his Sixth [13] Amendment rights. The Defendant seeks dismissal of the indictment, presumably with prejudice, as a remedy for the claimed violations of his constitutional rights.

■ The United States Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The Government's failure to preserve evidence does not constitute a denial of a defendant's Four-

teenth Amendment right to due process of law "unless the state acted in bad faith, the evidence had apparent exculpatory value and comparable exculpatory evidence was not reasonably available to the defendant." [14] *United States v. Malbrough,* 922 F.2d 458, 463 (8th Cir.1990) (citing *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Thus, the failure to preserve potentially useful evidence is not a denial of due process unless a defendant can show that the state acted in "bad faith." *Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528; *see Youngblood,* 488 U.S. at 58, 109 S.Ct. 333 (finding no violation of the Due Process Clause of the 14th Amendment in a state prosecution where there "was no suggestion of bad faith on the part of the police").

■ Here, the Court cannot find that any bad faith was involved in the destruction of the evidence in this case. Officer Evans testified that he followed the normal

11. The Fifth Amendment states:
   No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
   U.S. Const., amend. V.

12. The Fourteenth Amendment states, in relevant part:
   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction

the equal protection of the laws. U.S. Const., amend. XIV.

13. The Sixth Amendment states:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.
   U.S. Const., amend. VI.

14. Although much of the case law pertaining to bad faith in destruction of evidence implicates only the due process clause of the Fourteenth Amendment, which comes into play in state prosecutions, the analysis is equally applicable to the due process clause analysis under the Fifth Amendment, used in federal prosecutions. The "due process" analysis in this opinion, accordingly, relates to both Amendments without distinction.

procedure for destroying evidence in dismissed State of Iowa cases. He provided a printout of the evidence to be destroyed to the local case agents, checked the Polk County Attorney's Office computer records to make certain the state case against the Defendant had been dismissed, and then sent the packet to the Polk County Attorney's Office to be checked again to make certain that the evidence could be destroyed. He did not actually destroy the drug evidence until he had received a signed court order to do so, which is highly indicative of a lack of bad faith on his part. *See, e.g., United States v. Scoggins,* 992 F.2d 164, 167 (8th Cir.1993) (finding no due process violation where law enforcement, after sampling and videotaping the seized marijuana plants, destroyed the plants pursuant to department policy and after obtaining a court order).

Indeed, the destruction of the evidence in this instance appears to be the result of the local case agent's accidental oversight regarding the status of the Defendant's case in federal court. The hearing revealed that the local case agent is the only direct link between the federal and state authorities in regard to the evidence related to a transferred case. He is the only individual in the process with direct knowledge of the current status of the federal case, and is the only individual in a position to ensure that the evidence remains intact and in the possession of the state authorities until it is needed in the federal proceedings. In this instance, the local case agent signed off that the drug evidence related to the Defendant's case could be destroyed, but the record is devoid of any indication that he did so in bad faith; i.e., in order to prejudice the Defendant's defense or otherwise put him at a disadvantage.[15] *See Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528 (noting that "[t]he record contains no allegation of official animus towards [the Defendant] or of a conscious effort to suppress exculpatory evidence"). While a procedure that provides more interaction between state and federal authorities concerning evidence in transferred cases could likely have prevented this situation from occurring, the Court simply cannot conclude that the destruction of evidence in this case was the result of anything more than negligent oversight by the local case agent. *See Youngblood,* 488 U.S. at 58, 109 S.Ct. 333 (stating that the failure to refrigerate seized clothing and perform tests on semen samples in a case involving sexual assault could "at worst be described as negligent" under the

**15.** The Defendant argues that bad faith can be found if it is determined that law enforcement acted recklessly in destroying the evidence. Although the Supreme Court has left open the possibility that due process can be violated by something other than intentional misconduct by a Government agent, *see, e.g., Daniels v. Williams,* 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (finding no occasion to consider "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause" in the context of a § 1983 claim), the majority of courts considering bad faith in the destruction of evidence context have found that bad faith requires more than gross negligence or reckless behavior. *See, e.g., United States v. Jobson,* 102 F.3d 214, 218 (6th Cir.1996) (describing the police conduct in erasing a tape as "negligent, perhaps even grossly negligent," but "not a result of malice"); *United States v. Femia,* 9 F.3d 990, 993–94 (1st Cir. 1993) (holding that the government's destruction of tape recordings of conversations between the defendant and alleged coconspirators did not violate due process, despite the government's "gross negligence" in failing to preserve the tapes); *United States v. Vera,* 231 F.Supp.2d 997, 1000 (D.Or.2001) (" 'Bad faith' in this context requires some showing of 'connivance.' " (citing *United States v. Loud Hawk,* 628 F.2d 1139, 1146 (9th Cir.1979) (en banc))). Regardless, as noted above, the Court cannot find that the conduct by any official involved in the handling of the evidence in this case went beyond that of, at most, negligence.

circumstances of the case); *United States v. Chandler,* 66 F.3d 1460, 1467 (8th Cir. 1995) (describing the loss of one file among thousands as negligence rather than bad faith). All other individuals involved in the evidence destruction were proceeding according to the procedure employed in State of Iowa cases, and lacked knowledge of the current status of the case in federal court.

▮ Nor can the Court hold that the drug evidence destroyed in this case had "apparent exculpatory value" to the Defendant. *Malbrough,* 922 F.2d at 463. The physical drug evidence in this case would go to the issues of possession of a controlled substance and the quantity of the controlled substance attributable to the Defendant. Like the blood-alcohol test at issue in *Trombetta,* however, "the chances are extremely low that the [drug evidence] would have been exculpatory." *Trombetta,* 467 U.S. at 489, 104 S.Ct. 2528. The drugs have much more inculpatory value against the Defendant than exculpatory force in his favor.[16] Additionally, as in *Trombetta,* the Defendant will have the opportunity to attack the process and credibility of the DCI lab officials that analyzed the drugs and compiled a report on them before they were destroyed. *See id.* at 490, 104 S.Ct. 2528 (describing the means by which the blood alcohol test, the methodology behind it, and its administrator could be challenged "in an attempt to raise doubts in the mind of the factfinder" about the evidence). Furthermore, the Court agrees with Justice Stevens' statement in *Youngblood* that the jury will ultimately be in the best position to "perform th[e] calculus" about whether the destroyed evidence would have been exculpatory. *Youngblood,* 488 U.S. at 51, 109 S.Ct. 333 (Stevens, J., concurring).

▮ The Defendant argues that his due process rights and his Sixth Amendment right to a jury trial will be violated if the case is allowed to proceed, because the jury will be left to speculate as to the type, purity, and quantity of the drugs in the case. The Court disagrees. The Government always bears the burden to prove the existence and quantity of the drugs, and now must do so without being able to physically introduce the drugs themselves into evidence. The Defendant will be able to dispute the means by which the Government attempts to meet its burden of proof. The jury will still have to base its verdict on the evidence presented in the case, and if the Government cannot present evidence to support the charge, then the Court has the power to resolve the matter on a defense motion made at trial pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Defendant's due process rights under the Fifth and Fourteenth Amendments have not been violated by the accidental destruction of the drug evidence in this case. Neither will the Defendant's Sixth Amendment right to a jury trial on the elements of the offense be violated if the case proceeds to trial without this evidence. Accordingly, the Defendant's Motion to Dismiss (Clerk's No. 49) is DE-

---

**16.** The Court further notes that the exculpatory value of the evidence must have been apparent "before it was destroyed." *Trombetta,* 467 U.S. at 488–89, 104 S.Ct. 2528. Given that the drug evidence had already been analyzed and tested by the DCI lab and confirmed to contain controlled substances, *see* Gov't Ex. 5, there was no apparent exculpatory value to the evidence prior to its destruction.

NIED. Trial in this matter shall proceed as currently scheduled.

IT IS SO ORDERED.