# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2728
_____

United States of America

*Plaintiff - Appellee*

v.

Terance Morice Highbull

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: March 14, 2018
Filed: July 6, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Terance Highbull pleaded guilty to one count of sexual exploitation of a child, *see* 18 U.S.C. § 2251(a), but reserved the right to challenge the denial of his motion to suppress evidence recovered from a cell phone that his girlfriend provided to law

enforcement. On appeal, Highbull argues that the district court[1] erred in concluding that the girlfriend was acting as a private citizen—not a government agent—when she retrieved the phone from his vehicle and, thus, that the Fourth Amendment did not apply. Because the retrieval of the phone amounted to private conduct rather than government action, we affirm.

## I.

On February 19, 2015, the Sioux Falls Police Department received a domestic-disturbance call from a young boy, who reported that a man was harassing his mother. Andrew Mattson was the first officer to respond to the call. Upon arriving at the scene, Officer Mattson was flagged down by Michelle Janis, the mother of the boy who placed the call. Janis can be heard on a recording from Officer Mattson's body microphone exclaiming that someone had just taken off running. Officer Mattson asked her what was going on, and she responded: "I wanted to sign a complaint on him. He went and had pictures of my daughter naked, and she's only 13."

Janis identified the man as Highbull and informed Officer Mattson that the red Ford Taurus that was left running in front of her building belonged to him. A license plate check revealed that the Taurus was registered to Highbull at Janis's address. Janis then entered the vehicle, and Officer Mattson asked if she was "going to grab the keys." Although she said yes, Janis merely turned off the car, leaving the keys in the ignition. Rejoining Officer Mattson on the sidewalk in front of her apartment, Janis explained that she and Highbull had been arguing several days earlier because she refused to let him see their infant daughter. It was during this argument that she

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting in part the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

looked at Highbull's phone and saw the naked pictures of her thirteen-year-old daughter, who was not related to Highbull.

At that point, Officer Mattson asked Janis, "Do you have the phone?" Without explanation, she began walking back toward the Taurus and stammered, "Um, I don't know if it's this . . . I think it's . . . I don't know. . . I think he does have one. He probably got rid of it or whatever." She then reentered the vehicle just as Officer Mattson's backup arrived. The two officers conferred several feet away from the Taurus for the thirty seconds Janis was inside the vehicle. Officer Mattson later testified that he never directed Janis to enter the Taurus or to look for the phone, that he himself neither opened nor entered the car, and that his attention was on the backup officer while Janis was in the vehicle.

After her brief time in the Taurus, Janis emerged with Highbull's cell phone and handed it to Officer Mattson. She explained that there were nude photos of her daughter on the device but that she could no longer locate them because they were "deeper in the phone." When Officer Mattson could not find the pictures, Janis became upset, worrying that nothing was going to be done. Officer Mattson explained that he could not make an arrest solely on the basis of her statements but that he would take the phone for further investigation. A subsequent forensic analysis conducted pursuant to a search warrant uncovered the images.

Highbull was later charged with one count of sexual exploitation of a child. Before trial, he filed a motion to suppress all evidence obtained as a result of what he described as an illegal search of his vehicle. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). Among other things, he argued that the Fourth Amendment applied to Janis's search of the Taurus because she was acting as an agent or instrument of the government.

The district court referred the motion to suppress to a magistrate judge, who conducted an evidentiary hearing and issued a report and recommendation ("R&R"). The R&R concluded that Highbull failed to carry his burden of showing Janis had acted as a government agent. Although the R&R adopted Highbull's position that Officer Mattson acquiesced in Janis's search of the Taurus, as he "had a pretty good idea she was going to look for the phone," it found no evidence suggesting that "Janis was motivated *primarily* by a desire to help police."

Highbull accepted the R&R's factual summary but, as relevant here, objected to its legal conclusion that Janis's search of the car did not constitute government action. In particular, Highbull argued that Janis intended to aid law enforcement by retrieving the phone, as evidenced by her express desire to "sign a complaint on him." The district court acknowledged that Janis wanted to see Highbull arrested but noted that private citizens may have multiple reasons for assisting the police. It also rejected Highbull's contention that Janis performed her search at the request of Officer Mattson, concluding that his inquiry as to whether she had the phone was insufficient to "transform her into a government actor." Thus, the court adopted the R&R's determination that Highbull had not met his burden of proving that Janis was a government agent, and accordingly, it denied his motion to suppress.

Highbull subsequently entered into a plea agreement in which he reserved the right to challenge the admissibility of the challenged evidence and was sentenced to 300 months' imprisonment. He now appeals his conviction, arguing that the district court erred in finding no Fourth Amendment violation in Janis's search of his vehicle and retrieval of his phone.

## II.

The Fourth Amendment guarantees the right of citizens to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. However, as the

Supreme Court has long held, this protection extends only to actions undertaken by government officials or those acting at their direction. *See, e.g.*, *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989); *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971); *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). Thus, "the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative" but it does "protect[] against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner*, 489 U.S. at 614.

"Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010) (quoting *Skinner*, 489 U.S. at 614). In evaluating agency in the Fourth Amendment context, our court has focused on three relevant factors: "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *Id.* A defendant bears the burden of proving by a preponderance of the evidence that a private party acted as a government agent. *See, e.g.*, *United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010); *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987). In conducting this agency analysis, we review a district court's conclusions of law *de novo* and its factual findings for clear error. *Wiest*, 596 F.3d at 909.

The first factor—knowledge and acquiescence—cuts in favor of a finding of agency. The district court adopted the R&R's determination that Officer Mattson knew of and acquiesced in Janis's search of the Taurus, and the Government

-5-

conceded as much in its briefing before this court.[2] Yet the third factor—whether the government requested the challenged search—cuts against this conclusion. The district court adopted the R&R's finding that Officer Mattson "did not ask or compel Ms. Janis to conduct the search." Highbull attempts to challenge this determination on appeal by suggesting that Officer Mattson's question—"Do you have the phone?"—necessarily implied a request to search Highbull's car. Although Officer Mattson acknowledged that he made this inquiry in hopes of securing the phone, the district court did not clearly err in concluding that his question did not encompass a request for her to search the Taurus. Rather, he merely inquired as to whether Janis had the phone in her possession. As such, the third factor cuts against a finding of agency, as the district court did not clearly err in treating Janis's search as a "voluntary and unsolicited act." *See Wiest*, 596 F.3d at 910 (expressing an unwillingness to disturb findings of fact as to this factor under similar circumstances).

Thus, we turn to the remaining factor of whether Janis intended to assist law enforcement or instead acted to further her own purposes. Even when government officials know of and acquiesce in a warrantless search, we have been unwilling to impute agency where the private actor was not "motivated solely or even primarily by the intent to aid the officers" and where the government did not request the challenged search. *See United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004). This is precisely what transpired in the present case. The R&R observed that, while Janis undoubtedly aided Officer Mattson by retrieving the phone, there was no evidence suggesting that she "was motivated *primarily* by a desire to help police." As the R&R noted, given that Janis did not testify at the evidentiary hearing, we

_____

[2]We take no position on this finding as it does not affect the outcome of the case, but we note our sister circuits' assessment that "this factor . . . requires some evidence of Government participation in or affirmative encouragement of the private search" and that "[p]assive acceptance by the Government is not enough." *See United States v. Jarrett*, 338 F.3d 339, 345-46 (4th Cir. 2003) (discussing the Seventh, Ninth, and Tenth Circuits' similar reasoning as to the knowledge-and-acquiescence factor).

cannot be certain about her true motives for retrieving the phone. However, the record did indicate a compelling personal motive on her part: the protection of her daughter. Thus, the district court did not clearly err in concluding that Janis had, at best, a mixed motive for retrieving Highbull's phone from the Taurus.

Highbull challenges this finding on appeal, arguing that "Janis acted with the explicit intent to assist law enforcement." Because protecting her daughter and seeking justice required the involvement of law enforcement, Highbull attempts to collapse the distinction between her private motives and those of the police. In *United States v. Smith*, this court addressed a similar situation in which a private actor seemingly had both public- and private-minded motives for aiding law enforcement. 383 F.3d at 705. There, we held that a FedEx manager, who opened a package after a drug-dog alerted during a "parcel interdiction operation," was not acting as a government agent because she had a "dual motive of assisting the officers . . . [and] ensur[ing] that her employer was not being used as a means of carrying contraband." *Id.* at 703-05. We emphasized that the fact "a private citizen is motivated in part by a desire to aid law enforcement does not in and of itself transform her into a government agent." *See id.* at 705. Rather, "[g]iven the absence of evidence that [the manager] was motivated solely or even primarily by the intent to aid the officers," we refused to reverse the district court's finding that the manager's dual intent cut against a finding of agency. *Id.* Similarly, here, the district court concluded that Janis was not acting as an agent of the government because she was animated at least as much by a compulsion to protect her daughter as she was by any desire to aid the police. Moreover, it was not clearly erroneous for the district court and the magistrate judge to infer that Janis had independent personal motives for her conduct. For example, the nude images would have been invaluable in her custody dispute with Highbull, and she might have wanted to delete the pictures to prevent public dissemination. On this record, we are unwilling to find that the district court clearly erred in concluding that Janis was not motivated primarily by a desire to help the police.

Thus, as in *Smith*, although the district court found that Officer Mattson knew of and acquiesced in Janis's search of the vehicle, it did not err in denying Highbull's motion to suppress given that she did not conduct the search at the government's request and that there was insufficient "evidence that [she] was motivated solely or even primarily by the intent to aid the officers." *See id.*

Accordingly, we affirm Highbull's conviction.

_____