# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1966
_____

United States of America

*Plaintiff - Appellee*

v.

Gregory Scott Stephen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 25, 2020
Filed: January 4, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

While remodeling one of Appellant Gregory Stephen's homes, Vaughn Ellison discovered a hidden camera containing child pornography. Subsequent searches of Stephen's homes by law enforcement uncovered further child pornography and images of Stephen abusing children. A federal grand jury indicted Stephen for sexually exploiting children as well as possessing and transporting child pornography. Stephen moved to suppress evidence related to these charges, arguing

Fourth Amendment violations, which the district court[1] denied. Stephen conditionally pleaded guilty, and the district court sentenced him to 2,160 months' imprisonment. Stephen appeals, challenging both the suppression denial and his sentence. For the following reasons, we affirm.

## I.

On February 15, 2018, Ellison was remodeling his friend and former brother-in-law Stephen's house. While using the bathroom, Ellison noticed a USB drive (the "USB") on the toilet tank. Because Ellison had recently researched hidden recording devices following a break-in, Ellison recognized the USB as a hidden camera. Curious and concerned as to why there was a hidden camera in the bathroom—and what it had recorded—Ellison took the USB home but did not view its contents.

The next morning, Ellison returned to Stephen's home and discovered a young boy sleeping in the bedroom next to the bathroom where Ellison had found the USB. Ellison worried the boy would have used that bathroom. Stephen (a youth basketball coach) arrived shortly after with another boy, indicating he was taking them both to a basketball game. After returning home, Ellison viewed the USB's contents, finding at least fifty videos depicting children secretly recorded in various stages of undress. The following evening, Ellison discussed what he had seen and what he should do with his girlfriend, ultimately deciding to contact law enforcement.

On February 18, three days after Ellison took the USB and two days after viewing its contents, Ellison contacted Monticello Police Chief Britt Smith, and the two discussed what Ellison had found. Chief Smith asked Ellison to give him the USB, and the next day Ellison dropped off the USB at the Monticello Police Department. Chief Smith then sought the Iowa Division of Criminal Investigation's (the "DCI") assistance.

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

Two days later, the DCI took possession of the USB, obtained a search warrant for the device, and viewed its contents. After obtaining a search warrant, law enforcement searched Stephen's homes. Therein, they found more secret recording devices and a hard drive containing approximately 400 visual depictions of nude minor boys, including some images of Stephen molesting unconscious victims.

A federal grand jury subsequently indicted Stephen on five counts of sexually exploiting a child, 18 U.S.C. § 2251(a), one count of possessing child pornography, 18 U.S.C. § 2252(a)(4)(B), and one count of transporting child pornography, 18 U.S.C. § 2252(a)(1). Stephen moved to suppress evidence of those offenses. The district court denied Stephen's motion, finding no Fourth Amendment violations. Afterward, Stephen conditionally pleaded guilty to all counts, preserving his right to appeal the suppression denial. The district court sentenced Stephen to 2,160 months' imprisonment. Stephen appeals both the suppression denial and his sentence.

## II.

In evaluating a district court's decision denying a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006). Reversal is warranted "only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.* (internal quotation marks omitted). Here, Stephen argues that his Fourth Amendment rights were violated: (i) when Ellison took and searched the USB, (ii) when Chief Smith took the USB before obtaining a search warrant, and (iii) when the DCI searched the USB. Stephen further argues that, because of these violations, evidence found on the USB and in his homes, as well as statements Stephen made to law enforcement, must be suppressed as fruit of the poisonous tree.

## A.

Stephen first claims his Fourth Amendment rights were violated when Ellison took and searched the USB. "The Fourth Amendment protects persons against unreasonable searches and seizures *by the government*." *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (emphasis added). Thus, the Fourth Amendment does not apply to private-citizen searches "unless that private citizen is acting as a government agent." *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989) (internal citations and quotation marks omitted). In resolving this question, we have typically considered: (i) whether the government knew of and acquiesced in the citizen's conduct, (ii) whether the citizen intended to assist law enforcement, and (iii) whether the citizen acted at the government's request. *Smith*, 383 F.3d at 705. Here, Stephen concedes two of the three factors, admitting that law enforcement neither knew Ellison took or searched the USB nor asked him to do so. Stephen argues only that Ellison was acting as a government agent because he intended to assist law enforcement.

But, even if Ellison had an intent to assist law enforcement, it would not be enough to establish he was a government agent. Tellingly, Stephen cites no case where we have found government agency based solely on a private citizen's intent to assist law enforcement. And this makes sense. The core question is whether the private citizen was acting as a government agent, *see id.*, and agency typically requires the principal's assent, *see Astor v. Wells*, 17 U.S. (4 Wheat.) 466, 481 (1819) ("The relation of agent and principal cannot exist, without the consent of the principal."). Furthermore, while we have identified multiple relevant factors, the ultimate issue still "necessarily turns on the degree of the Government's participation in the private party's activities." *See Skinner*, 489 U.S. at 614. Here, where the government did not know of, acquiesce in, or request Ellison's conduct—

and where nothing else indicates governmental entanglement—there was simply no government participation, irrespective of Ellison's private intent. Without more, a bare intent to help law enforcement is insufficient to transform a private citizen into a government agent under the Fourth Amendment. Thus, even if Stephen is correct that Ellison had an intent to help law enforcement, his argument still fails.

Alternatively, Stephen's argument falters on its own terms because, here, Ellison lacked an intent to help law enforcement. At the suppression hearing, Ellison testified that he took and searched the USB because he was "curious" and "concerned" about its use and contents. Stephen argues that, in acting out of a concern for others, Ellison was really "act[ing] out of civic duty." But compassion does not suggest conspiracy, nor altruism agency. For example, in *United States v. Highbull*, a mother suspected her boyfriend's phone contained nude pictures of her thirteen-year-old daughter. 894 F.3d 988, 990-91 (8th Cir. 2018). With police standing nearby, she searched her boyfriend's car with the explicit purpose of finding the phone and showing it to police. *Id.* We held she was not a government agent, concluding in part that the mother's desire to protect her daughter was distinct from any intent to help law enforcement. *Id.* at 992-93.

Stephen argues that this case differs from *Highbull* because Ellison was trying to protect people he did not know. But this is a distinction without a difference. The question is whether an individual is primarily motivated to help law enforcement. Whether someone acts to protect someone they know or if he acts "to protect the community from harm," does not matter. *See United States v. Ginglen*, 467 F.3d 1071, 1075 (7th Cir. 2006). Not every Good Samaritan is a government agent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 488 (1971) ("It is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals.").

Moreover, Ellison's actions after searching the USB do not suggest he had a gung-ho attitude to help law enforcement. Ellison testified that he "really didn't know what to do with [the USB]." Further, he waited nearly two days and sought

his girlfriend's advice before contacting law enforcement. In *United States v. Inman*, we found that a private party's decision to "deliberate[] . . . for twenty to thirty minutes before reporting the discovery of child pornography" was incompatible with any intent to assist the government. 558 F.3d 742, 746 (8th Cir. 2009). More so here.

Finally, even if Stephen is correct that Ellison's "concern" was synonymous with an intent to help law enforcement, his argument still fails because he does not dispute that Ellison also acted out of curiosity. That "a private citizen is motivated in part by a desire to aid law enforcement does not in and of itself transform her into a government agent." *Highbull*, 894 F.3d at 993. Rather, a citizen must be "motivated solely or even primarily by the intent to aid the officers." *Id.* And Stephen has not shown that Ellison's concern—rather than his curiosity—was his primary motivation. *See Inman*, 558 F.3d at 745-46 (indicating that satisfying personal curiosity is different from an intent to help law enforcement).

The district court did not err in determining that Ellison's seizure and search of the USB were not subject to the Fourth Amendment.

B.

Stephen next claims that Chief Smith violated the Fourth Amendment by asking Ellison to bring the USB to the police station without first obtaining a search warrant. The district court found that Chief Smith had not "seized" the USB. A seizure "occurs when there is some meaningful interference with an individual's possessory interests." *United States v. Clutter*, 674 F.3d 980, 984 (8th Cir. 2012). The district court reasoned that Chief Smith had not meaningfully interfered with Stephen's possessory interest in the USB because Ellison had already taken it. *Cf. United States v. Jacobsen*, 466 U.S. 109, 119 (1984).

Stephen challenges this holding, insisting that *Jacobsen* is inapplicable to possessory interests. But we need not reach this argument as the district court

independently upheld the seizure because Chief Smith had probable cause to believe the USB contained child pornography and exigent circumstances justified immediate seizure pending obtaining a search warrant. Because Stephen does not contest this holding on appeal, he waives any challenge to this alternative holding. This alone defeats Stephen's argument. *See United States v. Benson*, 888 F.3d 1017, 1020 (8th Cir. 2018). But, even on the merits, the district court correctly found that Chief Smith did not violate the Fourth Amendment by seizing the USB before obtaining a warrant.

"Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant," the Fourth Amendment "permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983); *see also Clutter*, 674 F.3d at 985.

First, Ellison's discussion with Chief Smith about the USB established probable cause that the USB contained contraband. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000). When Ellison contacted Chief Smith, he identified himself to police, and Ellison delivered the USB to police in person. *See United States v. Nolen*, 536 F.3d 834, 839-40 (8th Cir. 2008) (explaining that tips from identifiable informants deserve greater weight because they "can be held responsible if [their] allegations turn out to be fabricated"). More importantly, he indicated he had seen child pornography on the USB firsthand. *See United States v. Stevens*, 530 F.3d 714, 718-19 (8th Cir. 2008) (finding probable cause in part because the tipster had offered "a first-person, eyewitness account of . . . contraband").

Second, "the exigencies of the circumstances demand[ed]" seizing the USB pending issuance of a warrant. *See Place*, 462 U.S. at 701. We considered a similar

-7-

case in *Clutter*. There, police had probable cause to believe Clutter's computers contained child pornography. 674 F.3d at 985. At that time, Clutter was already in jail, and Clutter's father had the computers. *Id.* at 982-83. Clutter's father, a former police officer, urged police to take the computers, which they did before obtaining a warrant. *Id.* We upheld the seizure, suggesting it was necessary "to prevent the disappearance of evidence" and "to ensure that the hard drive was not tampered with before a warrant was obtained." *Id.* at 985. Like *Clutter*, the contraband here was in the possession of a cooperative third party, and, without immediate seizure, the police risked losing digital evidence. *See also United States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013) (upholding warrantless seizure of laptop pending obtaining a warrant for similar reasons). If anything, the situation here was even more urgent because Stephen, unlike Clutter, was free and actively searching for the USB. Accordingly, the district court correctly concluded that Chief Smith did not violate the Fourth Amendment.

## C.

Stephen next claims that the DCI violated his Fourth Amendment rights by exceeding the scope of the search warrant when it viewed the USB's contents. "When considering whether a search exceeded the scope of a warrant, we look to the fair meaning of the warrant's terms." *United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) (per curiam) (internal quotation marks and alterations omitted). Here, the search warrant authorized law enforcement to conduct "[a] complete forensic examination of [the USB]." The ordinary reading of this phrase clearly authorized law enforcement to view the USB's contents. *See Merriam Webster's Collegiate Dictionary* 434 (11th ed. 2005) (defining "examine" as "to inspect closely").

Stephen counters that the warrant "expressly defined [a complete forensic examination] as 'extracting and cloning data'" while also "referenc[ing] copying." But, although the warrant states that "[t]he examination may include extracting and cloning data," the word "include" indicates this is not an exhaustive definition. *See*

-8-

*United States v. Reingold*, 731 F.3d 204, 228-29 (2d Cir. 2013) (holding, in interpreting the sentencing guidelines, that the word "includes" indicates an illustrative, not exhaustive, list); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012) ("[T]he word *include* does not ordinarily introduce an exhaustive list."). Accordingly, the district court properly found that law enforcement did not exceed the search warrant in viewing the USB's contents.

In sum, the district court correctly found that Stephen's Fourth Amendment rights were not violated. Accordingly, because there was no illegal search or seizure, Stephen's related fruit-of-the-poisonous-tree argument also fails. *See United States v. Villa-Gonzales*, 623 F.3d 526, 534 (8th Cir. 2010). The district court correctly denied Stephen's motion to suppress.

## III.

Stephen also appeals his sentence. The district court found that Stephen had an offense level of 43 and a criminal history category of I, yielding an advisory guidelines sentence of life imprisonment. The district court ultimately sentenced Stephen to 2,160 months' imprisonment.

Initially, it seemed Stephen might be arguing that his sentence was procedurally erroneous. But in his reply brief he conceded "that the District Court properly calculated the Guidelines range, treated that range as advisory, considered the § 3553(a) factors as applied to Mr. Stephen, and did not base its sentence on any clearly erroneous facts." Further, Stephen does not claim that the district court failed to explain adequately his sentence. Thus, Stephen is not claiming procedural error, *see United States v. Bordeaux*, 674 F.3d 1006, 1009 (8th Cir. 2012), and we consider only whether Stephen's 180-year sentence was substantively reasonable.

We review a sentence's substantive reasonableness under a "deferential abuse-of-discretion standard." *United States v. Cole*, 657 F.3d 685, 688 (8th Cir.

2011). When, as here, the district court imposes a within-guidelines sentence, we apply a presumption of reasonableness. *See United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (applying presumption of reasonableness to a 750-year sentence when the guidelines recommended life imprisonment).

At the outset, Stephen suggests that the district court failed to account for the fact that Stephen's guilty plea "spare[d] the government, the court, and the victims . . . the time, expense, and difficulty that a trial would have caused." This is mistaken. At sentencing, the district court expressly considered Stephen's guilty plea and described it as the strongest mitigating factor. But the district court also found this factor outweighed by others, including the fact that Stephen's acceptance of responsibility was half-hearted. The district court explained that, at sentencing, Stephen "focus[ed] . . . on his own achievements" and described his greatest regret as "the tarnishment [sic] of [his] reputation and his achievements" rather than focusing on the harm he inflicted on his victims. The district court "has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009). And Stephen's "disagreement with how the district court weighed the factors does not demonstrate abuse of discretion." *See United States v. McSmith*, 968 F.3d 731, 737 (8th Cir. 2020); *see also United States v. Sanchez-Rojas*, 889 F.3d 950, 952 (8th Cir. 2018) (rejecting argument that the district court abused its discretion by failing to give adequate weight to the defendant's guilty plea).

Stephen also argues life imprisonment "is simply excessive" as he "did not kill anyone, and no victim was physically injured." Stephen grossly downplays the seriousness and magnitude of his offense. The district court found that Stephen had committed "a horrendous offense" by sexually exploiting more than 400 children over nearly two decades. And the district court emphasized that the harm to the children was "incalculable and profound" and radiated to their families. Further, the district court acknowledged that Stephen's use of his position as a youth basketball coach to carry out his offense made it even more sinister. Considering the seriousness of Stephen's offense, the presumption of reasonableness, and the district

court's wide latitude to weigh the § 3553(a) factors, we find the district court did not abuse its discretion in imposing Stephen's sentence.

## IV.

For the foregoing reasons, we affirm.

_____