Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/30/2025 09:07 AM CDT

State of Nebraska, appellee, v.
William B. Langley, appellant.

___ N.W.3d ___

Filed May 30, 2025.    No. S-23-1039.

1. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.**
   When a motion to suppress is denied pretrial and again during trial on
   renewed objection, an appellate court considers all the evidence, both
   from the trial and from the hearings on the motion to suppress.
2. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to sup-
   press evidence based on a claimed violation of the Fourth Amendment,
   an appellate court applies a two-part standard of review. Regarding
   historical facts, an appellate court reviews the trial court's findings for
   clear error, but whether those facts trigger or violate Fourth Amendment
   protections is a question of law that an appellate court reviews indepen-
   dently of the trial court's determination.
3. **Constitutional Law: Search and Seizure.** The Fourth Amendment to
   the U.S. Constitution and article I, § 7, of the Nebraska Constitution
   prohibit unreasonable searches and seizures.
4. **Constitutional Law: Search and Seizure: Words and Phrases.** A
   search under the Fourth Amendment occurs whenever an expectation of
   privacy that society is prepared to consider reasonable is infringed.
5. **Search and Seizure.** A seizure of property occurs when there is some
   meaningful interference with an individual's possessory interests in that
   property.
6. **Search and Seizure: Evidence: Police Officers and Sheriffs.** The
   exclusionary rule is implicated when the evidence to which the objec-
   tion is made has been obtained through exploitation of the illegal
   actions of the police, not simply because the evidence would not have
   come to light but for the police's illegal actions.
7. **Constitutional Law: Search and Seizure: Police Officers and Sheriffs.**
   It does not violate the Fourth Amendment for a law enforcement officer

to accept and use evidence that a private party discovers pursuant to the party's own private search.

8. **Constitutional Law: Search and Seizure.** The constitutional protection against an unreasonable search and seizure proscribes only governmental action and is inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation and knowledge of a governmental official.

9. **Search and Seizure.** To determine whether a private person's search is actually a search by the state depends on whether the private person must be regarded as having acted as an instrument or agent of the state.

10. **Agents: Evidence: Proof.** A defendant bears the burden of proving by the greater weight of the evidence that a private party acted as a government agent.

11. **Constitutional Law: Search and Seizure.** The determination of whether a citizen's search was private, which would not be barred by the Fourth Amendment, or whether it instead was conducted by an instrument or agent of the government, is a question of fact.

12. **Search and Seizure: Appeal and Error.** Appellate courts review a trial court's ruling on whether a search was private like any other factual finding.

13. **Agents.** Whether a private party was acting as an agent of the government turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances.

14. **Search and Seizure: Agents.** A private person's status as a state or government agent in a search is not restricted to a search ordered, requested, or initiated by the state or government official but may include a search which is a joint endeavor between a private person and a state or government official.

15. **Constitutional Law: Search and Seizure.** A search is subject to the constitutional safeguard against an unreasonable search, prohibited by the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, if the search is a joint endeavor involving a private person and a state or government official.

16. **Search and Seizure.** There must be a great deal of entanglement between the conduct of a private individual and the police before a search in which they cooperate can be considered state action.

17. **Constitutional Law: Agents.** A private citizen's desire to assist law enforcement does not by itself convert that citizen into a government agent for purposes of Fourth Amendment analysis.

18. **Constitutional Law: Search and Seizure: Police Officers and Sheriffs.** A private party who has conducted a search and seizure does not become an agent of the government for purposes of the constitutional prohibitions against unreasonable search and seizure merely by turning over to the police the property seized.

19. **Search and Seizure.** Once a private search has been completed, subsequent involvement of government agents does not transform the original intrusion into a governmental search.

Petition for further review from the Court of Appeals, Riedmann, Chief Judge, and Moore and Welch, Judges, on appeal thereto from the District Court for Scotts Bluff County, Leo P. Dobrovolny, Judge. Judgment of Court of Appeals affirmed.

Jessica R. Meyers and Helen O. Winston, of Scotts Bluff County Public Defender's Office, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Freudenberg, J.
## INTRODUCTION
We granted further review of the Nebraska Court of Appeals' decision affirming the defendant's conviction for possession of a firearm by a prohibited person. He was sentenced to a term of 3 to 3 years' imprisonment. The Court of Appeals found no merit to his sole assignment of error, which was that the trial court erred in denying his motion to suppress a handgun located in his residence, a trailer house. The defendant's girlfriend's mother had given a law enforcement officer a locked case containing the handgun when the officer stopped at the defendant's house after noticing it was occupied. The house had been left empty and locked following the defendant's arrest. The case was not opened until law enforcement

obtained a warrant. We hold that the Fourth Amendment was not violated because the search that discovered the case was conducted by private citizens who were not acting as government agents.

## BACKGROUND

William B. Langley was charged with two counts of a prohibited person in possession of firearm—one count for a handgun and the other count for a rifle. Following a jury trial, Langley was found guilty of the handgun count and acquitted of the rifle count.

A search of Langley's residence was conducted by his probation officer after the probation officer suspected that Langley was intoxicated. Consuming alcohol was in violation of one of Langley's conditions of probation. The probation officer informed Langley he was initiating a search to dispose of any alcohol that might still be in the home. Langley's probation orders also prohibited him from possessing or having access to firearms and contained a "search and seizure clause."

The probation officer found alcohol. The probation officer also found a loaded rifle in Langley's son's room, along with some BB guns. Langley denied knowledge of the rifle. At the time of the search, the son was 17 years old and was at school.

Eventually, the probation officer found an empty handgun box in Langley's bedroom dresser. Langley gave multiple, different stories about where the handgun was located. When Langley told the probation officer that his son had the handgun, the probation officer told Langley that his son was not old enough to have a gun.

The probation officer messaged Robert Hackett, who was both a sergeant with the sheriff's office and the chief of police. When Hackett confirmed that Langley was a felon, Hackett dispatched officers to Langley's home to assist in the search. The officers were unable to find a handgun. The house was then locked, and Langley was arrested.

Later that evening, Langley's girlfriend and the girlfriend's mother were at the home with Langley's son, collecting the

son's belongings so that he could stay with the girlfriend and
her mother while Langley was in jail. The son testified that
he, Langley's girlfriend, and the girlfriend's mother were also
searching for the handgun. The son explained that the girl-
friend and her mother had told him he might be charged with
minor in possession of a firearm if they could not find the
handgun; however, there was no further questioning as to why
the girlfriend and her mother may have held this belief.

The probation officer testified he had contacted the son to
let him know that Langley was in jail and that the son was
"going to be cared for." The probation officer described the son
as "a really good kid."

The probation officer testified that in that same telephone
call, he also spoke with the girlfriend's mother. The probation
officer was familiar with the mother, who had experience run-
ning rehabilitation programs for incarcerated individuals and
had previously communicated with the probation officer con-
cerns about Langley's behavior while on probation. Langley's
girlfriend and her mother lived near Langley's home, and both
functioned as part of the son's family. The probation officer
confirmed with the girlfriend's mother that the son had a place
to stay. Also, the probation officer brought up the concern that
a handgun might be in the home. During that conversation, the
mother provided the probation officer with information about
a case and the possible location of the handgun.

The probation officer testified that he spoke with Hackett
around the same time. Hackett, who took possession of the
locked case that later was discovered to contain the handgun,
testified at trial and the pretrial hearing. A video from the body
camera Hackett was wearing when he stopped at the home was
entered into evidence. Langley did not object to Hackett's tes-
timony or the video evidence.

Hackett testified that the probation officer told Hackett that
he had concerns about a handgun's still being in the home
and about the son's placement. The probation officer informed
Hackett that the girlfriend was going to be taking care of the

son. The probation officer also informed Hackett that the girl-friend and the son had possibly located the handgun. After being so informed, Hackett drove by Langley's home and noticed there was a vehicle parked outside.

Hackett stopped at the trailer house and knocked. Hackett heard someone from inside tell him he could come in. That person was later identified as Langley's girlfriend. Neither the mother nor the girlfriend lived with Langley, and Hackett was aware of that fact. Hackett also knew that the son was a minor. As Hackett stepped inside, the son emerged from the back of the residence and greeted him. The son did not ask Hackett to leave or otherwise object to his presence. They discussed the son's plans to join the military after graduating from high school.

Hackett said to the son, "[The probation officer] called you. We're worried about a gun." Hackett testified at trial that he was concerned about the son's possibly being around a fire-arm, as well as the small community's learning that there was a vacant house with a firearm inside. The girlfriend's mother immediately led Hackett into the living room and handed him a locked silver case that was sitting in plain view. The mother told Hackett that the son had last seen the handgun inside the case. The son told Hackett, "I'm fairly confident the gun's in there."

The son and the girlfriend subsequently continued to search around the house for anywhere else the gun might be. Hackett observed, looking at areas opened by the son, but nothing more was found.

Over the telephone, the probation officer gave Hackett per-mission to seize and open the locked silver case. Hackett took the case and placed it into evidence at the sheriff's office.

The following day, Hackett obtained a search warrant to open the case. The search warrant to open the case was not challenged by Langley at trial and is not challenged on appeal. Hackett testified that upon opening the case pursu-ant to the warrant, he discovered it contained a handgun and

ammunition. The make and model of the handgun matched those of the empty box found in Langley's dresser.

Langley had moved before trial to suppress all fruits of an alleged search by Hackett of Langley's home without a warrant, which he alleged violated his constitutional protection against unreasonable seizures under the 4th and 14th Amendments to the U.S. Constitution and article I §§ 1, 3, and 7 of the Nebraska Constitution. The district court denied Langley's motion to suppress the handgun. First, the district court found that Hackett was granted entry by the girlfriend, who had apparent authority to admit him. The district court did not make any findings with respect to whether the son was of sufficient age and maturity to consent to entry, or whether he did so. Second, the district court found that Hackett did not conduct a search. Rather, after Hackett "simply [made] a general inquiry about the handgun," Hackett was handed the locked case, which had been discovered by a private individual. The court said Hackett "did nothing other than come in the door after being invited to do so, and ask about a handgun." The district court concluded that there was not a search by law enforcement, so the Fourth Amendment was not implicated when the locked case was taken into law enforcement's possession. At trial, Langley renewed the motion to suppress by objecting to the admission of the handgun.

Langley appealed to the Court of Appeals. On appeal, Langley argued that the handgun should have been suppressed because Hackett violated Langley's Fourth Amendment rights by entering his home without authorized consent or a warrant. Langley asserted the girlfriend did not have apparent authority to let Hackett into the house and Hackett did not obtain permission from the son to enter the house; instead, the son, a minor, merely acquiesced to Hackett's claim of lawful authority. Langley said that the locked silver case was not in plain view until "the unauthorized trek into the living room occurred" and that Hackett's "wandering through the home"

was a search.[1] Langley concluded that because Hackett "did not have permission to be in the house nor in the living room, and [the girlfriend] did not have the authority to let him in, [the locked silver case] and all evidence stemming from the seizure of the silver case ought to be suppressed."[2]

The Court of Appeals affirmed the conviction.[3] It agreed with the district court that Hackett entered the residence with consent; however, it focused on the son, rather than the girlfriend. The Court of Appeals found the record established that the son had common authority over the premises. Applying *State v. Butzke*[4] and analyzing the specific facts of the case, the Court of Appeals found that the son was of an age and maturity to voluntarily grant consent for Hackett to enter the residence. The Court of Appeals also agreed with the district court that the recovery of the locked silver case was not the result of a search by Hackett.

The Court of Appeals alternatively found that any error in overruling the motion to suppress was harmless, because Langley did not object to either Hackett's or the probation officer's testimony at trial describing the recovery of the handgun. Furthermore, Langley did not object to the body camera footage that included a custodial statement by Langley that his DNA would probably be on the gun.

## ASSIGNMENTS OF ERROR

On appeal, Langley assigns that the district court erred in concluding no search occurred, which resulted in the overruling of his motion to suppress. On further review, Langley assigns that the Court of Appeals erred by finding that the handgun seized was not the fruit of an illegal search.

---

[1] Brief for appellant at 13.

[2] *Id.* at 11.

[3] *State v. Langley*, 33 Neb. App. 297, 15 N.W.3d 722 (2024).

[4] *State v. Butzke*, 7 Neb. App. 360, 584 N.W.2d 449 (1998), *disapproved on other grounds, State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023).

## STANDARD OF REVIEW

[1] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.[5]

[2] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[6]

## ANALYSIS

Langley argues that the exclusionary rule applies to the handgun admitted at trial, because there was no warrant for Hackett to enter the home and the State did not sustain its burden to prove one of the few specifically established exceptions to the warrant requirements. Langley's argument misses the mark. The State did not have the burden to show an exception to the warrant requirement because the handgun was found in a private search and not through governmental action.

[3-5] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit unreasonable searches and seizures.[7] A search under the Fourth Amendment occurs whenever an expectation of privacy that society is prepared to consider reasonable is infringed.[8] A seizure of property occurs when there is some meaningful

---

[5] *State v. Hammond, supra* note 4.

[6] *Id.*

[7] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

[8] *Id.*

interference with an individual's possessory interests in that property.[9]

[6-8] The exclusionary rule is implicated when the evidence to which the objection is made has been obtained through exploitation of the illegal actions of the police, not simply because the evidence would not have come to light but for the police's illegal actions.[10] The U.S. Supreme Court has long held that it does not violate the Fourth Amendment for a law enforcement officer to accept and use evidence that a private party discovers pursuant to the party's own private search.[11] The constitutional protection against an unreasonable search and seizure proscribes only governmental action and is inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation and knowledge of a governmental official.[12] In *Burdeau v. McDowell*,[13] the U.S. Supreme Court said that the origin and history of the Fourth Amendment

> clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the

---

[9] See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). See, also, *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

[10] See, *United States v. Jacobsen, supra* note 9; *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). See, also, *In re Interest of Ashley W.*, 284 Neb. 424, 821 N.W.2d 706 (2012).

[11] See, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921).

[12] See, *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991); *State v. Ware*, 219 Neb. 594, 365 N.W.2d 418 (1985); *State v. Skonberg*, 194 Neb. 550, 233 N.W.2d 919 (1975); *State v. Gundlach*, 192 Neb. 692, 224 N.W.2d 167 (1974); *State v. Howard*, 184 Neb. 274, 167 N.W.2d 80 (1969). See, also, *United States v. Jacobsen, supra* note 9; *Walter v. United States*, 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980).

[13] *Burdeau v. McDowell, supra* note 11, 256 U.S. at 475.

Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

[9] We held in *State v. Gundlach*[14] that "[u]nless a private citizen in making a search is acting as an agent for the police, his acts may not be attributed to them." To determine whether a private person's search is actually a search by the state depends on whether the private person "'must be regarded as having acted as an "instrument" or agent of the state.'"[15]

[10-12] A defendant bears the burden of proving by the greater weight of the evidence that a private party acted as a government agent.[16] The determination of whether a citizen's search was private, which would not be barred by the Fourth Amendment, or whether it instead was conducted by an instrument or agent of the government, is a question of fact.[17] Thus, we review the trial court's ruling on whether a search was private like any other factual finding.[18]

[13] Whether the private party was acting as an agent of the government "turns on the degree of the Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.'"[19]

---

[14] *State v. Gundlach, supra* note 12, 192 Neb. at 695, 224 N.W.2d at 170.

[15] *State v. Abdouch*, 230 Neb. 929, 937, 434 N.W.2d 317, 323 (1989), quoting *Coolidge v. New Hampshire, supra* note 11.

[16] See, e.g., *U.S. v. Kramer*, 75 F.4th 339 (3d Cir. 2023); *U.S. v. Ellyson*, 326 F.3d 522 (4th Cir. 2003); *U.S. v. Highbull*, 894 F.3d 988 (8th Cir. 2018); *U.S. v. Shahid*, 117 F.3d 322 (7th Cir. 1997).

[17] See, *U.S. v. Leffall*, 82 F.3d 343 (10th Cir. 1996); *State v. Brockman*, 339 S.C. 57, 528 S.E.2d 661 (2000), *modified, State v. Frasier*, 437 S.C. 625, 879 S.E.2d 762 (2022).

[18] See *id.* See, also, *U.S. v. Hudson*, 86 F.4th 806 (7th Cir. 2023); *U.S. v. Johnson*, 505 Fed. Appx. 606 (8th Cir. 2013); *State v. Buswell*, 460 N.W.2d 614 (Minn. 1990).

[19] *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). See, also, e.g., *U.S. v. Highbull, supra* note 16.

In evaluating agency in the Fourth Amendment context, the Eighth Circuit focuses on three relevant factors: "'[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request.'"[20] Other courts' lists of factors are more numerous and specific. For instance, the court in *State v. Smith*[21] set out a nonexclusive list of 13 factors: (1) the subsidiary facts of who or what initiated the action by the private individual, (2) who decides whether the fruit of the action is to be given to the state, (3) who determined the way in which the action was to be conducted, (4) the extent of the contact between the state and the individual, (5) whether the individual receives a monetary or other form of inducement from the government, (6) whether the government had prior knowledge that the individual would act as she or he did, (7) whether the primary purpose of the state and the actor was the same, (8) whether a statute mandates the private action, (9) whether the purpose of the individual was to benefit the government, (10) whether the government's role was active or passive, (11) whether the government exercised coercive means, (12) whether the act involved a power that was the exclusive prerogative of the government, and (13) whether at the time of the act the private citizen was engaged in assisting the government in its public purpose. In contrast, several federal courts distill the inquiry into two broader primary factors: (1) whether the government knew of and acquiesced in the private individual's challenged conduct and (2) whether the private individual intended to assist law enforcement or had some other independent motivation.[22] Under the first factor of this two-factor approach,

---

[20] *U.S. v. Highbull, supra* note 16, 894 F.3d at 992.

[21] *State v. Smith*, 40 Conn. App. 789, 673 A.2d 1149 (1996).

[22] See, *U.S. v. Day*, 591 F.3d 679 (4th Cir. 2010); *U.S. v. Paige*, 136 F.3d 1012 (5th Cir. 1998); *U.S. v. Feffer*, 831 F.2d 734 (7th Cir. 1987); *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981).

however, evidence of more than mere knowledge and passive acquiescence by the government is required before finding an agency relationship;[23] the government must, in "some affirmative way . . . instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment."[24] Furthermore, both prongs must be satisfied considering the totality of the circumstances before the seemingly private search may be deemed a government search.[25]

[14,15] In *State v. Abdouch*,[26] we held that a private person's status as a state or government agent in a search is not restricted to a search ordered, requested, or initiated by the state or government official but may include a search which is a joint endeavor between a private person and a state or government official. Thus, a search is subject to the constitutional safeguard against an unreasonable search, prohibited by the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, if the search is a joint endeavor involving a private person and a state or government official.[27]

We explained in *Abdouch* that while the "'silver platter doctrine'" has been rejected as between state and federal officials, it still applies to searches by private parties.[28] Under that doctrine, as applied to a private party, a search by a private party is not a search by law enforcement if the evidence was turned over by the private party to law enforcement "'on a silver platter.'"[29] The decisive factor is "'the actuality of a share by [law enforcement] in the total enterprise of securing

---

[23] *U.S. v. Jarrett*, 338 F.3d 339 (4th Cir. 2003).

[24] *U.S. v. Benoit*, 713 F.3d 1, 9 (10th Cir. 2013) (internal quotation marks omitted).

[25] *Id.*

[26] *State v. Abdouch, supra* note 15.

[27] *Id*.

[28] *Id.* at 940, 434 N.W.2d at 324.

[29] *Id.* at 939, 434 N.W.2d at 324.

and selecting evidence by other than sanctioned means.'"[30] In *Abdouch*, we held there was a joint endeavor violative of the Fourth Amendment where the warrantless search was conducted jointly by law enforcement and private citizens who lacked authorization to enter the defendant's home but were granted entry by the adult babysitter in response to law enforcement's display of government authority.

[16] Other courts have elaborated that "there must be 'a great deal of entanglement' between the conduct of the private individual and the police before the search can be considered state action."[31] De minimis or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to Fourth Amendment scrutiny.[32] "A government agent must be involved either directly as a participant—not merely as a witness—or indirectly as an encourager of the private person's search before we will deem the person to be an instrument of the government."[33]

[17,18] A private citizen's desire to assist law enforcement does not by itself convert that citizen into a government agent for purposes of Fourth Amendment analysis.[34] Likewise, a private party who has conducted a search and seizure does not become an agent of the government for purposes of the constitutional prohibitions against unreasonable search and seizure merely by turning over to the police the property seized.[35]

---

[30] *Id.*

[31] *State v. Archer*, 197 Ohio App. 3d 570, 576, 968 N.E.2d 495, 499 (2011).

[32] *United States v. Walther, supra* note 22.

[33] *U.S. v. Leffall, supra* note 17, 82 F.3d at 347. See, also, *State v. Kopsa*, 126 Idaho 512, 887 P.2d 57 (1994).

[34] See, *U.S. v. Smith*, 383 F.3d 700 (8th Cir. 2004); *U.S. v. Koenig*, 856 F.2d 843 (7th Cir. 1988); *Kourakis v. State*, 2015 Ark. App. 612, 474 S.W.3d 536 (2015).

[35] 31 N.Y. Jur. 2d *Criminal Law: Procedure* § 254 (2025).

[19] Once a private search has been completed, subsequent involvement of government agents does not transform the original intrusion into a governmental search.[36] As explained by the U.S. Supreme Court in *United States v. Jacobsen*,[37] the exercise of governmental dominion and control over an item made available by a private party and obtained through a private search is not unreasonable, because the private search has already compromised the expectation of privacy. Thus, a closed container given to law enforcement by a private party can be seized, at least temporarily, without a warrant, where there is probable cause to believe the container contains contraband.[38] This is consistent with our discussion in *Abdouch* that so long as the search became a joint endeavor ""*before* the object of the search was completely accomplished,"" it is immaterial whether the government official ""originated the idea or joined in it while the search was in progress.""[39]

There was no dispute that the handgun, the object of the search conducted by the son, girlfriend, and girlfriend's mother, was found before Hackett arrived. In other words, law enforcement was not involved in the relevant search, which had been completed when Hackett arrived at the house.

While there was evidence that the son, girlfriend, and girlfriend's mother may have been attempting to assist law enforcement or believed the son might be in legal jeopardy if the handgun were not found, Langley did not demonstrate that law enforcement directed them to conduct the search or threatened the son with criminal prosecution if he could not

---

[36] *State v. Weaver*, 231 N.C. App. 473, 752 S.E.2d 240 (2013).

[37] See *United States v. Jacobsen, supra* note 9.

[38] See *id.*

[39] *State v. Abdouch, supra* note 15, 230 Neb. at 941, 434 N.W.2d at 325 (emphasis supplied), quoting 1 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 1.8(b) (2d ed. 1987). See, also, *Lustig v. United States*, 338 U.S. 74, 69 S. Ct. 1372, 93 L. Ed. 1819 (1949).

find the handgun. The record shows that any communication leading up to the search between a government agent and the son, girlfriend, and girlfriend's mother was with the probation officer, and Langley does not question the constitutionality of a search conducted by the probation officer or upon his direction. Langley's challenge is limited to the actions of Hackett when he returned to the house.

The district court did not clearly err when it found that Hackett "did nothing other than come in the door after being invited to do so, and ask about a handgun." Thus, it did not err in concluding that Hackett did not conduct a search relevant to the object Langley sought to suppress. The facts demonstrate that the son, girlfriend, and girlfriend's mother, three private individuals, handed the locked silver case over to Hackett on a "silver platter," explaining to Hackett why they believed the handgun was located inside. It was not unconstitutional for Hackett to accept the case and place it in police custody until a warrant could be obtained to open it.

The relevancy under the Fourth Amendment of the legality of Hackett's location when accepting, on a "silver platter," the fruits of the private search is unclear. As stated, once a private search has been completed, subsequent involvement of government agents does not transform the original intrusion into a governmental search. Under the facts of this case, one of the three private individuals would likely have handed over the locked silver case had the same conversation occurred while Hackett stood outside the house instead of in the living room. Even if Hackett's entry was the "but for" cause of his possession of the case, it would be insufficient under all the circumstances here presented to transform private actions into governmental action implicating the Fourth Amendment. Moreover, especially given the limited scope of Hackett's activities inside the house before coming into possession of the case, we agree with the lower courts that Hackett's entry into the house did not violate the Fourth Amendment. Even

guests can have actual authority to admit law enforcement into common areas for a limited purpose.[40]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals affirming Langley's conviction.

AFFIRMED.

---

[40] See 4 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 8.5(e) (6th ed. 2020) (consent by guest).